# UNITED STATES DISTRICT COURT

RECEIVED

SEP 28 2020

for the

_Middle_ District of _Tennessee_

US DISTRICT COURT
MID DIST TENN

_____ Division

Case No. _3:20-cv-00810_

_(to be filled in by the Clerk's Office)_

Daniel James Silva

_Plaintiff(s)_
_(Write the full name of each plaintiff who is filing this complaint._
_If the names of all the plaintiffs cannot fit in the space above,_
_please write "see attached" in the space and attach an additional_
_page with the full list of names.)_

-v-

See Attached

_Defendant(s)_
_(Write the full name of each defendant who is being sued. If the_
_names of all the defendants cannot fit in the space above, please_
_write "see attached" in the space and attach an additional page_
_with the full list of names. Do not include addresses here.)_

Jury Trial: _(check one)_ ☒ Yes ☐ No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should _not_ contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include _only_: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

I Daniel James file hereby file a civil rights complaint the following defendants

against here are their addresses and what type of lawsuit I will bring (either 1983

or bivens claim)

Scott Kingsley Swift – 2201 Harding Pl, Nashville, TN 37215

(1983 case)

Austin swift - 2201 Harding Pl, Nashville, TN 37215

(1983 case)

Joseph Matthew Alwyn- 2201 Harding Pl, Nashville, TN 37215

(1983 case)

Jay schaudies- 2201 Harding Pl, Nashville, TN 37215

(1983 case)

Harding Trust group- 2201 Harding Pl, Nashville, TN 37215

(1983 case)

Tennessee metro PD- 5101 Harding Place, Nashville, TN 37211

(1983 case

Judge Dianne Turner- 408 2nd Ave N Ste 2120, Nashville, TN 37201

( bivens claim)

Judge Robert L. Hinkle- 111 N. Adams St. Tallahassee, Florida 32301

( bivens claim)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name                  *See attached*

Address

City                State               Zip Code

County
Telephone Number
E-Mail Address

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name                  *See attached*

Job or Title *(if known)*

Address

City                State               Zip Code

County
Telephone Number
E-Mail Address *(if known)*

☐ Individual capacity        ☐ Official capacity

Defendant No. 2

Name

Job or Title *(if known)*

Address

City                State               Zip Code

County
Telephone Number
E-Mail Address *(if known)*

☐ Individual capacity        ☐ Official capacity

Defendant No. 3
    Name
    Job or Title *(if known)*
    Address

*See attached*

| City | State | Zip Code |

    County
    Telephone Number
    E-Mail Address *(if known)*

☐ Individual capacity    ☐ Official capacity

Defendant No. 4
    Name
    Job or Title *(if known)*
    Address

| City | State | Zip Code |

    County
    Telephone Number
    E-Mail Address *(if known)*

☐ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☒ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III.  Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?

See attached

B.   What date and approximate time did the events giving rise to your claim(s) occur?

C.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

**IV.** **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See attached



**V.** **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  9 - 24 - 2020

Signature of Plaintiff

Printed Name of Plaintiff  Daniel James Silva

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

|  | City | State | Zip Code |
|---|---|---|---|

Telephone Number

E-mail Address

1    United States District Court Middle District of Tennessee

2    801 Broadway, Room 800, Nashville, TN 37203

3    _____ Daniel James Silva _____

4              Plaintiff

5    Scott Kingsley Swift

6    Austin swift

7    Joseph Matthew Alwyn

8    Jay schaudies

9    Harding Trust group

10   Tennessee metro PD

11   Judge Dianne Turner

12   Judge Robert L. Hinkle

13   _____ _____

14        Defendants

15              Amended Civil rights complaint

1

I Daniel James file hereby file a civil rights complaint the following defendants

against here are their addresses,

Scott Kingsley Swift – 2201 Harding Pl, Nashville, TN 37215

Austin swift - 2201 Harding Pl, Nashville, TN 37215

Joseph Matthew Alwyn- 2201 Harding Pl, Nashville, TN 37215

Jay schaudies- 2201 Harding Pl, Nashville, TN 37215

Harding Trust group- 2201 Harding Pl, Nashville, TN 37215

Tennessee metro PD- 5101 Harding Place, Nashville, TN 37211

Judge Dianne Turner- 408 2nd Ave N Ste 2120, Nashville, TN 37201

Judge Robert L. Hinkle- 111 N. Adams St. Tallahassee, Florida 32301

And my address Daniel James silva is - Po Box 493, Col Fax, NC, 27235

1  Due to the fact that on 5/19/2020 I went to address 2201 Harding place to serve

2  defendant Taylor Alison swift a summary judgment and also to attempt an arrest

3  on her for the following crimes,

4  Multiple counts of Obstruction of justice 1505

5  Multiple rico violations

6  Multiple counts of 18 U.S. Code § 241. Conspiracy against rights

7  And multiple other crimes along with her lawyer Doug Baldridge he orchestrated

8  her crimes I'll explain below,

9

10                          Factual background

11  1.    On 06/18/2020  a motion to dismiss in case 4:19-cv-00286-RH-MJF SILVA v.

12  SWIFT et al  was granted that  Doug Baldridge filed for Taylor swift (dkt 74),

13   it violates my 5th and 14th amendment right of due process and my 7th

14  amendment right to a jury trial in an amount in controversy above 20 dollars or

15  75,000 usd of today's money. My constitutional amendment rights were violated

16  by swift, tas rights management and Baldridge so that trademarks (1989 sn:

17  86363039) and  (1989 sn: 86369161) were not declared fraudulent which they are

3

1    because swifts name of her album is called (T.S. 1989) sn:86369455, meaning

2    trademarks (1989 sn: 86363039) and (1989 sn: 86369161) are both fraudulent

3    misrepresentations of her album meaning that 2- 3rd degree felonies were

4    committed to obtain both marks. The motion to dismiss was also a criminal act of

5    obstruction 1505.

6

7    2.Taylor swift has paid Doug Baldridge millions of dollars in retainers over nearly 4

8    years and 7 lawsuits to obstruct both 1989 trademarks (1989 sn: 86363039) and

9    (1989 sn: 86369161) committing a  RICO violation, a person who has committed

10   "at least two acts of racketeering activity" drawn from a list of 35 crimes—27

11   federal crimes and 8 state crimes—within a 10-year period can be charged with

12   racketeering if such acts are related in one of four specified ways to an

13   "enterprise". Those found guilty of racketeering can be fined up to $25,000 and

14   sentenced to 20 years in prison per racketeering count. In addition, the racketeer

15   must forfeit all ill-gotten gains and interest in any business gained through a

16   pattern of "racketeering activity." RICO also permits a private individual

17   "damaged in his business or property" by a "racketeer" to file a civil suit. The

18   plaintiff must prove the existence of an "enterprise". The defendant(s) are not the

4

1    enterprise; in other words, the defendant(s) and the enterprise are not one and

2    the same. There must be one of four specified relationships between the

3    defendant(s) and the enterprise: either the defendant(s) invested the proceeds of

4    the pattern of racketeering activity into the enterprise (18 U.S.C. § 1962(a)); or

5    the defendant(s) acquired or maintained an interest in, or control of, the

6    enterprise through the pattern of racketeering activity (subsection (b)); or the

7    defendant(s) conducted or participated in the affairs of the enterprise "through"

8    the pattern of racketeering activity (subsection (c)); or the defendant(s) conspired

9    to do one of the above (subsection (d) In essence, the enterprise is either the

10   'prize,' 'instrument,' 'victim,' or 'perpetrator' of the racketeers. A civil RICO action

11   can be filed in state or federal court. In Beauford v. Helmsley, ____ S. Ct. _____

12   (1989), the Supreme Court held that it is not necessary to prove that multiple

13   schemes, episodes or transactions occurred in order to establish a "pattern of

14   racketeering activity," as long as the racketeering acts were "neither isolated nor

15   sporadic." The racketeering activity is not required to benefit the enterprise. The

16   participants in the scheme are not required to have personally profited, though

17   some did.  United States v. Killip, 819 F.2d 1542, 1`549 (10th Cir. 1987.)

18

1 4.All evidence of swifts fraudulent marks can be found in the trademark office

2 online database were trademarks (1989 sn: 86363039) and (1989 sn: 86369161)

3 have identical trademark specimens (T.S. 1989) sn:86369455 is the real name of

4 her album, it even says (T.S. 1989) on the CD itself making (1989 sn: 86363039)

5 and (1989 sn: 86369161) fraudulent misrepresentations, to make it worse swift's

6 trademark lawyer N.rose only made amendments to the fraudulent registrations

7 only after I filed my 1st lawsuit of many vs swift, rose was actively committing

8 crime on swifts behalf as far back as 3 years ago.

9

10 4.    It is clear as Day with a 100% certainty that Taylor Alison swift and James

11 Douglas Baldrige are guilty of conspiring against my  5th 7th and 14th amendment

12 rights and committed at least 2 acts of RICO to continue their crimes.

13 5. to make a long story very short Taylor swift and Doug Baldridge obstructed

14 trademarks (1989 sn: 86363039) and (1989 sn: 86369161) that have identical

15 trademark specimens  (T.S. 1989) sn:86369455 is the real name of her album, it

16 even says (T.S. 1989) on the CD itself making (1989 sn: 86363039) and (1989 sn:

17 86369161) fraudulent misrepresentations. All 11 federal judges who are named

18 below over saw all my cases in Florida,

6

1

2 Harvey E. Schlesinger, presiding Monte C. Richardson, referral

3 3:17-cv-00292-HES-MCR Silva v. Swift      filed 03/13/17   closed 07/13/17

4

5 Marcia Morales Howard, presiding James R. Klindt, referral

6 3:17-cv-00814-MMH-JRK Silva v. Swift filed 07/17/17   closed 05/01/18

7

8 Marcia Morales Howard, presiding James R. Klindt, referral

9 3:18-cv-00688-MMH-JRK Silva v. TAS Rights Management, LLC  filed 05/25/18

10 closed 10/04/18

11

12 Timothy J. Corrigan, presiding Monte C. Richardson, referral

13 3:19-cv-00354-TJC-MCR  Silva v. Tas Rights Management LLC    filed 02/27/19

14 closed 05/13/19

15 Roy B. Dalton, Jr., presiding T. B. Smith, referral

1  6:19-cv-00384-RBD-T_S  Silva v. Tas Rights Management LLC    filed 02/27/19

2  closed 03/27/19

3

4  ROBERT L HINKLE, presiding MICHAEL J FRANK, referral

5  4:19-cv-00286-RH-MJF SILVA v. SWIFT et al Date filed: 06/21/2019 Date

6  terminated: 06/18/2020

7

8  4:19-cv-00290-AW-CAS SILVA v. BALDRIDGE et al

9  ALLEN C WINSOR, presiding CHARLES A STAMPELOS, referral

10  Date filed: 06/21/2019 Date terminated: 12/18/2019

11  ALL NAMED JUDGES WHERE MADE AWARE OF SWIFTS AND BALDRIDGES CRIMES

12  AND CONSPIRED AGINEST MY RIGHTS AND COMMITTED MUTIPLE OBSTRUCTION

13  OF JUSTICE 1505 COUNTS AND RICO VIOLATIONS IN THE PROCESS.

14  Obstruction of Justice is a criminal complaint pursuant to the omnibus clause, or

15  "catch-all provision" of 18 U.S.C. § 1503, which provides:

16

1   Whoever . . . corruptly or by threats or force, or by any threatening letter or

2   communication, influences, obstructs, or impedes, or endeavours to influence,

3   obstruct, or impede, the due administration of justice, shall be (guilty of an

4   offence).

5

6   And also

7   Title 18, U.S.C., Section 242

8   Deprivation of Rights Under Color of Law

9

10  This statute makes it a crime for any person acting under color of law, statute,

11  ordinance, regulation, or custom to willfully deprive or cause to be deprived from

12  any person those rights, privileges, or immunities secured or protected by the

13  Constitution and laws of the U.S.

14  This law further prohibits a person acting under color of law, statute, ordinance,

15  regulation or custom to willfully subject or cause to be subjected any person to

16  different punishments, pains, or penalties, than those prescribed for punishment

9

1  of citizens on account of such person being an alien or by reason of his/her color

2  or race.

3

4  Acts under "color of any law" include acts not only done by federal, state, or local

5  officials within the bounds or limits of their lawful authority, but also acts done

6  without and beyond the bounds of their lawful authority; provided that, in order

7  for unlawful acts of any official to be done under "color of any law," the unlawful

8  acts must be done while such official is purporting or pretending to act in the

9  performance of his/her official duties. This definition includes, in addition to law

10  enforcement officials, individuals such as Mayors, Council persons, Judges,

11  Nursing Home Proprietors, Security Guards, etc., persons who are bound by laws,

12  statutes ordinances, or customs.

13

14  Sec. 1983. - Civil action for deprivation of rights

15  Every person who, under color of any statute, ordinance, regulation, custom, or

16  usage, of any State or Territory or the District of Columbia, subjects, or causes to

17  be subjected, any citizen of the United States or other person within the

18  jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia Title 42, U.S.C., Section 14141.

"This Constitution, and the Laws of the United States [and Treaties] which shall be made in Pursuance thereof; . . . . shall be the supreme Law of the Land. +++ Supremacy Clause, Article VI, Clause 2 of the United States Constitution

When a judge acts intentionally and knowingly to deprive a person of his constitutional rights he exercises no discretion or individual judgment; he acts no longer as a judge, but as a " minister" of his own prejudices. [386 U.S. 547, 568].

1   A judge is liable for injury caused by a ministerial act; to have immunity the judge

2   must be performing a judicial function. See, e. g., Ex parte Virginia, 100 U.S. 339 ;

3   2 Harper & James, The Law of Torts 1642-1643 (1956).

4   The presence of malice and the intention to deprive a person of his civil rights is

5   wholly incompatible with the judicial function.

6

7   When the state is one of the perpetrators and violators, there can be no

8   expectation of just, indeed any, relief from it. The State cannot cause a federal

9   violation, and then try to prohibit litigants from seeking redress in the federal

10  courts for those same violations (i.e. the state cannot violate our fundamental

11  rights, and then try to have us dismissed out of federal court for seeking

12  vindication of those rights) ' "We have long recognized that a state cannot create

13  a transitory cause of action and at the same time destroy the fight to sue on that

14  transitory cause of action in any court having jurisdiction", Tennessee Coal, Iron &

15  R, Co. v. George, 233 U.S. 354, 360 (1914)' cited in Marshall v. Marshall

16  (2006).Judges' oath of office includes the undertaking to uphold the laws and

17  Constitution of the United States. Any Judge violating such undertakings loses

1   jurisdiction, resulting in his orders being VOID, and he himself commits a

2   treasonable offense against the United States.

3

4   Punishment varies from a fine or imprisonment of up to one year, or both, and if

5   bodily injury results or if such acts include the use, attempted use, or threatened

6   use of a dangerous weapon, explosives, or fire shall be fined or imprisoned up to

7   ten years or both, and if death results, or if such acts include kidnapping or an

8   attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated

9   sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned

10   for any term of years or for life, or both.

11

12                     FRAUD UPON THE COURT (By The Court)

13   Fraud Upon the Court is where the Judge (who is NOT the "Court") does NOT

14   support or uphold the Judicial Machinery of the Court. The Court is an unbiased,

15   but methodical "creature" which is governed by the Rule of Law... that is, the

16   Rules of Civil Procedure, the Rules of Criminal Procedure and the Rules of

17   Evidence, all which is overseen by Constitutional law. The Court can ONLY be

18   effective, fair and "just" if it is allowed to function as the laws proscribe. The sad

13

1    fact is that in MOST Courts across the country, from Federal Courts down to local

2    District courts, have judges who are violating their oath of office and are NOT

3    properly following these rules, (as most attorney's do NOT as well, and are usually

4    grossly ignorant of the rules and both judges and attorneys are playing a revised

5    legal game with their own created rules) and THIS is a Fraud upon the Court,

6    immediately removing jurisdiction from that Court, and vitiates (makes ineffective

7    - invalidates) every decision from that point on. Any judge who does such a thing

8    is under mandatory, non-discretionary duty to recuse himself or herself from the

9    case, and this rarely happens unless someone can force them to do so with the

10   evidence of violations of procedure and threat of losing half their pensions for life

11   which is what can take place. In any case, it is illegal, and EVERY case which has

12   had fraud involved can be re-opened AT ANY TIME, because there is no statutes

13   of limitations on fraud.

14

15   6. Judge ROBERT L HINKLE refused to grant me a fair hearing a necessary right to

16   due process, so he could commit obstruction of justice 1505 he obstructed

17   trademarks (1989 sn: 86363039) and  (1989 sn: 86369161) in his own case as well

18   as covering up past judges felonious obstruction  . he also broke Title 18, U.S.C.,

14

1  Section 242 Deprivation of Rights Under Color of Law, and also multiple rico

2  violations. Judge MICHAEL J FRANK the magistrate also committed obstruction of

3  justice and Title 18, U.S.C., Section 242 Deprivation of Rights Under Color of Law

4  also rico violations in case 4:19-cv-00286-RH-MJF SILVA v. SWIFT et al.

5  7. sections 1 though 7 describe a prologue to the new civil rights violations which

6  ill explain now.

7

8                                   Statement of claim

9  on 5/19/2020 I went to address 2201 Harding place to serve defendant Taylor

10  Alison swift and also to attempt an arrest on her for the following crimes,

11  Multiple counts of Obstruction of justice 1505

12  Multiple RICO violations

13  Multiple counts of 18 U.S. Code § 241. Conspiracy against rights and 42 U.S. Code

14  § 1985. Conspiracy to interfere with civil rights

15  And multiple other crimes along with her lawyer Doug Baldridge he orchestrated

16  her crimes ill explain below.

17

1  I had gone to address 2201 Harding place and when I got there I was met by 2

2  armed guards but I did not attempt to beach the gate, I handed over a copy of the

3  my civil rights lawsuit for case  4:19-cv-00286-RH-MJF SILVA v. SWIFT et al. a

4  certified complaint and a singed affidavit explaining swifts crimes in detail, on the

5  arresting affidavit by officer Andrew Mullen which he stated (the defendant was

6  trying to serve federal rico violations paperwork to a resident) admitting he knew

7  swift lives at the house  and address, he later stated ( the defendant was there to

8  serve papers and to make a citizens arrest.  Officer MULLEN has blatantly

9  admitted that he not only knew why I was there but after understating why I was

10  there, feloniously obstructing my legitimate citizen's arrest also protecting SWIFT

11  from arrest in the process.

12       I have 2 counts to this Civil rights complaint,

13                    COUNT 1

14  1st by officer Andrew Mullen placing me under arrest for 3rd degree trespass

15  Mullen and the other 4 officers that where there committed the following civil

16  rights violations and broken the following criminal statues federal and state

17  committed by all named parities in the lawsuit,

18

1   By Mullen arresting me after reading the certified civil rights complaint and

2   affidavit he committed

3   1st obstruction of justice 1505 (multiple counts) being that lawsuit  4:19-cv-

4   00286-RH-MJF SILVA v. SWIFT et al was pending at the time,

5   2nd 2010 Tennessee Code

6   Title 39 - Criminal Offenses

7   Chapter 11 - General Provisions

8   Part 4 - Criminal Responsibility

9   39-11-411 - Accessory after the fact.

10

11  (a)  A person is an accessory after the fact who, after the commission of a felony,

12  with knowledge or reasonable ground to believe that the offender has committed

13  the felony, and with the intent to hinder the arrest, trial, conviction or

14  punishment of the offender:

15

16   (1)  Harbors or conceals the offender.

1

(2)  Provides or aids in providing the offender with any means of avoiding

arrest, trial, conviction or punishment; or

(3)  Warns the offender of impending apprehension or discovery.

(b)  This section shall have no application to an attorney providing legal services

as required or authorized by law.

(c)  Accessory after the fact is a Class E felony.

[Acts 1989, ch. 591, § 1; 1994, ch. 978, § 4; 1995, ch. 281, § 1.]

Also hes an 39-11-411. Accessory TO A FALSE POLICE REPORT

2010 Tennessee Code

Title 39 - Criminal Offenses

Chapter 16 - Offenses Against Administration of Government

Part 5 - Interference with Government Operations

39-16-502 - False reports.

39-16-502. False reports.

(a)  It is unlawful for any person to:

(1)  Initiate a report or statement to a law enforcement officer concerning an

offense or incident within the officer's concern knowing that:

 (A)  The offense or incident reported did not occur;

(B)  The person has no information relating to the offense or incident reported;

or(C)  The information relating to the offense reported is false; or

(2)  Make a report or statement in response to a legitimate inquiry by a law

enforcement officer concerning a material fact about an offense or incident

within the officer's concern, knowing that the report or statement is false and

with the intent to obstruct or hinder the officer from:

. [Acts 1989, ch. 591, § 1; 1990, ch. 1030, § 28; 1998, ch. 690, § 1; 2000, ch. 976, §

1; 2002, ch. 849, § 6.]

## Count 3

Judge Hinkle denied me due process of a right to be heard in open court,

committing obstruction of justice and RICO violations in the process, the

defendants in this case are also accessories to Hinkle's crimes.

1   within the officer's concern, knowing that the report or statement is false and

2   with the intent to obstruct or hinder the officer from:

3

4      (A)  Preventing the offense or incident from occurring or continuing to

5   occur; or

6      (B)  Apprehending or locating another person suspected of committing an

7   offense;

8   (2)  A violation of subdivision (a)(3) is a Class C felony. [Acts 1989, ch. 591, § 1;

9   1990, ch. 1030, § 28; 1998, ch. 690, § 1; 2000, ch. 976, § 1; 2002, ch. 849, § 6.]

10

11   Due to the fact that the other named defendants not only fall under

12   2010 Tennessee Code

13   Title 39 - Criminal Offenses

14   Chapter 16 - Offenses Against Administration of Government

15   Part 5 - Interference with Government Operations

1  39-16-502 - False reports. But also 39-11-411. Accessory after the fact, for swifts

2  rico violations and the civil rights violations perpetrate by the arresting officer

3  (Mullen) and his back up.

4

5  Mullens arrest affidavit is fraudulent because the police report was fraudulent,

6  the report was made to obstruct my arrest. Being that mullens  affidavit  is

7  fraudulent he and 4 others violated my 4th amendment right, the 4th

8  amendment is the right of the people to be secure in their persons, houses,

9  papers, and effects, against unreasonable searches and seizures, shall not be

10 violated, and no warrants shall issue, but upon probable cause, supported by oath

11 or affirmation, and particularly describing the place to be searched, and the

12 persons or things to be seized. Mullens and 4 other officers illegal searched my

13 person and car on 2201 Harding places property.

14 All defendants also fall under criminal Malicious Prosecution

15 The person being sued initiated a legal proceeding against the criminal defendant

16 (now a plaintiff) – for example, they filed a false police report; The proceeding

17 ends in a acquittal or dismissal; The person who initiated the legal proceeding had

18 an improper person (meaning it was not a mistake but rather, was done for some

1 kind of malicious purpose, for example) The criminal defendant-turned-plaintiff

2 was damaged in some manner.

3                                    Second count

4 The second count is ever worse than the first, so after I went to Harding place got

5 illegally searched and arrested tying to enforce federal broken statues which goes

6 against my 4th amendment right, the second count was caused by the Nashville

7 criminal court, on 5/9/2020 I was arrested at Harding place and was booked into

8 jail about 2 hours later I had a pretrial intervention so I was released on my own

9 accord.

10 Its been over 3 months since my arrest and I haven't received a court appointed

11 lawyer my 6th amendment right also the court has blatantly ignored the rules of

12 criminal procedure, I also assert this lawsuit to be classes based being that most

13 of the defendant are rich I am poor thus the follow case law applies

14 Plaintiff alleges a "class based", invidiously discriminatory animus is

15 behind the conspirators' action as the Court records reflect. That the

16 actions were clearly a product of bias and prejudice of the Court. See

17 Griffen v. Breckridge, 403 U.S. 88, 102 (1971)

1

2   The U.S. Supreme Court acknowledged in Bray v. Alexandria Women's Health

3   Clinic 113 S.Ct.753 (1993) that the standard announced in Griffen was not

4   restricted to "race" discrimination. It is therefore reasonable to assume

5   that 1985 (3) may be used for "class-based" claims other than race which is

6   alleged in this case.

7   The defendant lawyers acting in conspiracy with state actors under color of

8   law have become state actors in this case. The U.S. Supreme Court has ruled

9   that "private parties", lawyers in this case, may be held to the same

10  standard of "state actors" where the final and decisive act was carried out

11  in conspiracy with a state actor or state official. See Dennis v. Sparks,

12  449 U.S. 24, 101 S.Ct., 183 also See Adickes v. S.H. Kress & Co., 398 U.S.

13  144, 90 S.Ct. 1598.

14

15  Plaintiff's Complaint is based in part on discrimination and political

1   affiliations by lawyers and lawyer-judges, under 42 USCA 1983 & 1985. See

2   reversal case Acevedo-Diaz v Aponte (1993, CA1 Puerto Rico) 1 F3d 62,

3   summary op at (CA1 Puerto Rico) 21 M.L.W. 3212, 14 R.I.L.W. 389.

4   Also my due process was violated by judge turner and she broken the following

5   rules of criminal procedure.

6   Rule 5:

7   Initial Appearance Before Magistrate.

8   (a) In General.(1) Appearance Upon an Arrest. Any person arrested–except upon a

9   capias pursuant to an indictment or presentment–shall be taken without

10  unnecessary delay before the nearest appropriate magistrate of:

11  (A) the county from which the arrest warrant issued; or

12  (B) the county in which the alleged offense occurred if the arrest was made

13  without a warrant, unless a citation is issued pursuant to Rule 3.5.

14

15   Rule 5.1 Rule 5.1: Preliminary Hearing.

16

1 (a) Procedures. The following rules apply to a preliminary hearing:

2

3 (1) Evidence. The finding that an offense has been committed and that there is

4 probable cause to believe that the defendant committed it shall be based on

5 evidence which may not be inadmissible hearsay except documentary proof of

6 ownership and written reports of expert witnesses. Rules excluding evidence

7 acquired by unlawful means are applicable.

8

9 (2) Defendant's Right to Present Evidence and Cross-Examine. The defendant may

10 cross-examine witnesses against him or her and may introduce evidence.

11

12 (3) Content and Access to Record of Proceeding. The evidence of the witnesses

13 does not have to be reduced to writing by the magistrate, or under the

14 magistrate's direction, and signed by the respective witnesses; but the

15 proceedings shall be preserved by electronic recording or its equivalent. If the

16 defendant is subsequently indicted, such recording shall be made available to the

17 defendant or defense counsel so they may listen to the recording in order to be

18 apprised of the evidence introduced in the preliminary hearing. Where the

25

1  recording is no longer available or is substantially inaudible, the trial court shall

2  order a new preliminary hearing upon motion of the defendant filed not more

3  than 60 days following arraignment. The indictment shall not be dismissed while

4  the new preliminary hearing is pending. If the magistrate conducting the new

5  preliminary hearing determines that probable cause does not exist, the

6  magistrate shall certify such finding to the trial court and the trial court shall then

7  dismiss the indictment. The discharge of the defendant by the dismissal of the

8  indictment in such circumstances does not preclude the state from instituting a

9  subsequent prosecution for the same offense.

10

11  (b) When Probable Cause Found. When the magistrate at a preliminary hearing

12  determines from the evidence that an offense has been committed and there is

13  probable cause to believe that the defendant committed it, the magistrate shall

14  bind the defendant over to the grand jury and either release the defendant

15  pursuant to applicable law or commit the defendant to jail by a written order.

16

17  I was never granted a first appearance or had a Preliminary Hearing.

18  Also

1    Rule 10: Arraignment.

2    (a) General. Before any person is tried for the commission of an offense, the

3    person shall be called into open court and arraigned, except as provided in Rule

4    43.

5    (b) Procedure. The arraignment shall consist of the following:

6    (1) ensuring that the defendant has a copy of the indictment, presentment, or

7    information before called upon to plead;

8    (2) reading the indictment, presentment, or information to the defendant or

9    stating to the defendant the substance of the charge; and then

10

11   (3) asking the defendant to plead to the indictment, presentment, or information.

12

13   (c) Record. The arraignment shall be entered on the record.

14   (d) Jointly Charged Defendants. Defendants who are jointly charged may be

15   arraigned separately or together in the court's discretion.

16   This rule creates a formal arraignment procedure in Tennessee. The rule applies

17   only to Circuit or Criminal Courts or other criminal courts of record.

1   The accused must be given a copy of the indictment or presentment before being

2   called upon to plead. A uniform procedure is provided applicable to all cases.

3

4   I was never given an Arraignment.

5   Rule 11: Pleas.

6   (a) Plea Alternatives.

7   (1) In General. A defendant may plead not guilty, guilty, or nolo contendere. The

8   court shall enter a plea of not guilty if a defendant refuses to plead or if a

9   defendant corporation, limited liability company, or limited liability partnership

10  fails to appear.

11

12  (2) Nolo Contendere. A defendant may plead nolo contendere only with the

13  consent of the court. Before accepting a plea of nolo contendere, the court shall

14  consider the views of the parties and the interest of the public in the effective

15  administration of justice.

16

1  (3) Conditional Plea. A defendant may enter a conditional plea of guilty or nolo

2  contendere in accordance with Rule 37(b).

3  I was never given an opportunity to make a plea.

4

5  Judge Dianne Turner allowed 4 rules of Tennessee rules of criminal procedure top

6  be broken and inturn she can fall under conspiracy against civil rights 18 U.S. Code

7  § 242. Deprivation of rights under color of law

8

9  Whoever, under color of any law, statute, ordinance, regulation, or custom,

10  willfully subjects any person in any State, Territory, Commonwealth, Possession,

11  or District to the deprivation of any rights, privileges, or immunities secured or

12  protected by the Constitution or laws of the United States, or to different

13  punishments, pains, or penalties, on account of such person being an alien, or by

14  reason of his color, or race, than are prescribed for the punishment of citizens,

15  shall be fined under this title or imprisoned not more than one year, or both; and

16  if bodily injury results from the acts committed in violation of this section or if

17  such acts include the use, attempted use, or threatened use of a dangerous

18  weapon, explosives, or fire, shall be fined under this title or imprisoned not more

29

1 than ten years, or both; and if death results from the acts committed in violation

2 of this section or if such acts include kidnapping or an attempt to kidnap,

3 aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an

4 attempt to kill, shall be fined under this title, or imprisoned for any term of years

5 or for life, or both, or may be sentenced to death.

6 (June 25, 1948, ch. 645, 62 Stat. 696; Pub. L. 90–284, title I, § 103(b), Apr. 11,

7 1968, 82 Stat. 75; Pub. L. 100–690, title VII, § 7019, Nov. 18, 1988, 102 Stat. 4396;

8 Pub. L. 103–322, title VI, § 60006(b), title XXXII, §§ 320103(b), 320201(b), title

9 XXXIII, § 330016(1)(H), Sept. 13, 1994, 108 Stat. 1970, 2109, 2113, 2147; Pub. L.

10 104–294, title VI, §§ 604(b)(14)(B), 607(a), Oct. 11, 1996, 110 Stat. 3507, 3511.)

11 For violating my 5th 6th and 14th amendment rights at a minimum she can also

12 fall under accessory to swifts rico violations.

13 Taylor swift bought 2201 Harding place for her mother I have multiple articles

14 stating such, Jay schaudies is a real person but he's the straw purchaser for 2201

15 Harding place, so crazy fans cant find out where her or her family lives, all the

16 named defendants can fall under

17 Accessory to Multiple counts of Obstruction of justice 1505 (federal law)

18 Accessory to Multiple rico violations (federal law)

30

1  Accessory to Multiple counts of 18 U.S. Code § 241. Conspiracy against rights and

2  (federal law)

3  39-11-411. Accessory after the fact. (state law)

4  39-16-502 - False reports. (state law)

5  All defendants live with swift and have prevented her arrest because all can fall

6  under 39-11-411. Accessory after the fact for committing 39-16-502 - False

7  reports. If they don't live with her the other defendants are connected to address

8  2201 Harding place in some fashion enough to be guilty of  the crimes listed,

9  being that the house was gifted to her mother her dad Scott Kingsley Swift by

10 common law should own 50% of 2201 Harding place, married couples split all

11 property 50/50 at least at a liable standpoint.

12

13 Judge Norman Harris signed mullens arrest affidavit, so he falls under the same

14 crimes as Judge Dianne Turner.

15 To sum up the merits to this lawsuit,

16 So as a summary of the merits of this case,

31

1  So count 1 – I was illegally arrested at 2201 Harding place for enforcing federal

2  law, officer mullens affidavit is fraudulent because the police report that called

3  him to the address was a false report violating my 4th amendment right by

4  searching the car I was traveling in and my person was illegally searched.

5  Count 2 –  Judge Dianne Turner violated my 5th 6th and 14th amendment rights

6  because I wasn't granted due process, wasn't given a lawyer and rules of criminal

7  procedure 5., 5.1, 10 and 11 rules where broken.Being that it has been 3 months

8  and neither  judge has yet to attempt to contact me and asked me about the rico

9  violations on mullens arrest affidavit, Judge Dianne Turner and Judge Norman fall

10  under Taylor swifts federal rico violations as conspirators.

11  Why this court the United States District Court Middle District Of Tennessee has

12  jurisdiction and  over this case,

13  28 U.S. Code § 1391. Venue generally (a) Applicability of Section.—Except as

14  otherwise provided by law—

15  (1) this section shall govern the venue of all civil actions brought in district courts

16  of the United States; and

17  (2) the proper venue for a civil action shall be determined without regard to

18  whether the action is local or transitory in nature.

32

1    (b) Venue in General.—A civil action may be brought in—

2    (1) a judicial district in which any defendant resides, if all defendants are residents

3    of the State in which the district is located;

4    (2) a judicial district in which a substantial part of the events or omissions giving

5    rise to the claim occurred, or a substantial part of property that is the subject of

6    the action is situated; or

7    (3) if there is no district in which an action may otherwise be brought as provided

8    in this section, any judicial district in which any defendant is subject to the court's

9    personal jurisdiction with respect to such action.

10    (c) Residency.—For all venue purposes—

11    (1) a natural person, including an alien lawfully admitted for permanent residence

12    in the United States, shall be deemed to reside in the judicial district in which that

13    person is domiciled;

14    (2) an entity with the capacity to sue and be sued in its common name under

15    applicable law, whether or not incorporated, shall be deemed to reside, if a

16    defendant, in any judicial district in which such defendant is subject to the court's

17    personal jurisdiction with respect to the civil action in question and, if a plaintiff,

18    only in the judicial district in which it maintains its principal place of business; and

33

1     (3) a defendant not resident in the United States may be sued in any judicial

2     district, and the joinder of such a defendant shall be disregarded in determining

3     where the action may be brought with respect to other defendants.

4

5     All defendants besides judge Hinkle is a Nashville or Tennessee resident, I was

6     arrested in the jurisdiction of this court.

7     Memorandum of law to bring this case and defense against any dismissal,

8     Dismissal Issues:

9     The Complaint should not be dismissed unless it appears to a certainty that

10    Plaintiffs would be entitled to no relief under any state of facts that

11    could be proved in support of the claims. See Gomez v Toledo (1980, US) 64 L

12    Ed 2d 572, 100 S Ct 1920.

13    The allegations of a Complaint prepared by a state prisoner acting pro se

14    are generally taken as true for purposes of motion to dismiss. See Hughes v

15    Rowe (1980, US) 66 L Ed 2d 163, 101 S Ct 173.

16    RULE 60

34

1  The final judgement of this Court should be vacated under Rule 60(B). The

2  Court is requested to weigh the interest in substantial justice against the

3  simple need for preserving finality of the judgement. See Expenditures

4  Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institute, 1974, 500 F.2d.

5  808, 163 U.S. App.D.C.140. See also Brown v. Clark Equipment Co., D.C. Mc.

6  1982, 961 F.R.D. 166.

7

8  Court -a judgement to dismiss because of some trumped up technicality giving

9  excuse to dismiss a non-lawyer pro se litigant's complaint with merit in a

10  lawyer dominated Court hearing. In support of Plaintiffs Motion to vacate

11  Judgement, the following cases are offered; Picking v. Pennsylvania Railway,

12  (151 F2d.240) Third Circuit Court of Appeals.

13

14  The ruling of the court in this case held; "Where a plaintiff pleads pro se

15  in a suit for protection of civil rights, the court should endeavor to

1  construe the Plaintiff's pleading without regard to technicalities." In

2  Walter Process Equipment v. Food Machinery 382 U.S. 172 (1965) it was held

3  that in a "motion to dismiss", the material allegations of the complaint are

4  taken as admitted."

5  Case law to bring this lawsuit as a rico violation in part

6  Rico Case Law:

7  The defendants constitute an illegal enterprise in acts or threat of acts in

8  violation of Civil Rico Federal Racketeering Act USC 18, 1961-1963 et seq.

9  The following are particular violations:

10

11

12  18 USC 241: Conspiracy against Rights of Citizens:

13  18 USC 3: Accessory after the fact, knowing that an offense has been

14  committed against the United States, relieves, receives, comforts or assists

15  the offender in order to hinder or prevent his apprehension, trial or

16  punishment.

1    18 USC 242: Deprivation of Rights color of law of rights protected under the

2    Constitution of the U.S.

3

4    18 USC 512: Tampering with a witness

5

6    18 USC 1341: Mail fraud

7

8    18 USC 1343: Wire fraud

9

10    18 USC 1503: Obstruction of justice

11

12    18 USC 1510: Obstructing of criminal investigation

13    18 USC 1513: Retaliating against a witness, victim or informant

14    18 USC 1951: Interference with interstate commerce

15    18 USC 1621: Perjury

1    18 USC 1001: Fraud

2    Continued statute of limitation in ongoing activity (conspiracy) (bankruptcy fraud)

3

4    Non-Lawyer pro se litigants not to be held to same standards as a practicing

5    lawyer,

6    Many pro se litigants will use this in their pleadings; "Pleadings in this

7    case are being filed by Plaintiff In Propria Persona, wherein pleadings are

8    to be considered without regard to technicalities. Propria, pleadings are

9    not to be held to the same high standards of perfection as practicing

10   lawyers. See Haines v. Kerner 92 Sct 594, also See Power 914 F2d 1459 (11th

11   Cir1990), also See Hulsey v. Ownes 63 F3d 354 (5th Cir 1995). also See In

12   Re: HALL v. BELLMON 935 F.2d 1106 (10th Cir. 1991)."

13

14   In Puckett v. Cox, it was held that a pro-se pleading requires less

15   stringent reading than one drafted by a lawyer (456 F2d 233 (1972 Sixth

16   Circuit USCA). Justice Black in Conley v. Gibson, 355 U.S. 41 at 48 (1957)

1   "The Federal Rules rejects the approach that pleading is a game of skill in

2   which one misstep by counsel may be decisive to the outcome and accept the

3   principle that the purpose of pleading is to facilitate a proper decision on

4   the merits." According to Rule 8(f) FRCP and the State Court rule which

5   holds that all pleadings shall be construed to do substantial justice."

6

7   Defense against dismissal of complaint under Rule 12-B

8   There is legal sufficiency to show Plaintiff is entitled to relief under his

9   Complaint. A Complaint should not be dismissed for failure to state a claim

10  unless it appears beyond a doubt that the Plaintiff can prove no set of

11  facts in support of his claim which would entitle him to relief. See Conley

12  v. Gibson, 355 U.S. 41, 45-46 (1957) also Neitzke v. Williams, 109 S. Ct.

13  1827, 1832 (1989). Rule 12(b)(6) does not countenance dismissals based on a

14  judge's disbelief of a complaint's factual allegations. In applying the

15  Conley standard, the Court will "accept the truth of the well-pleaded

factual allegations of the Complaint."

Brotherhood of Trainmen v. Virginia ex rel. Virginia State Bar, 377 U.S. 1; v. Wainwright, 372 U.S. 335; Argersinger v. Hamlin, Sheriff 407 U.S. 425 Litigants can be assisted by unlicensed laymen during judicial proceedings. Conley v. Gibson, 355 U.S. 41 at 48 (1957) "Following the simple guide of rule 8(f) that all pleadings shall be so construed as to do substantial justice"... "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The court also cited Rule 8(f) FRCP, which holds that all pleadings shall be construed to do substantial justice. Davis v. Wechler, 263 U.S. 22, 24; Stromberb v. California, 283 U.S. 359; NAACP v. Alabama, 375 U.S. 449 "The assertion of federal rights, when plainly and reasonably made, are not to be defeated under the name of local practice." Elmore v. McCammon (1986) 640 F. Supp. 905 "... the right to file a lawsuit pro se is one of the most important rights under the constitution and laws." Federal Rules of Civil Procedures, Rule 17, 28 USCA "Next Friend" A next friend is a person who represents someone who is unable to tend to his or her own interest. Haines

40

v. Kerner, 404 U.S. 519 (1972) "Allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient"... "which we hold to less stringent standards than formal pleadings drafted by lawyers." Jenkins v. McKeithen, 395 U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co., 151 Fed 2nd 240; Pucket v. Cox, 456 2nd 233

Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers. Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938) "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." NAACP v. Button, 371 U.S. 415); United Mineworkers of America v. Gibbs, 383 U.S.715; and Johnson v. Avery, 89 S. Ct. 747 (1969) Members of groups who are competent nonlawyers can assist other members of the group achieve the goals of the group in court without being charged with "unauthorized practice of law." Picking v. Pennsylvania Railway, 151 F.2d. 240, Third Circuit Court of Appeals The plaintiff's civil rights pleading was 150 pages and described by a federal judge as "inept". Nevertheless, it was held "Where a plaintiff pleads pro se in a suit for

41

1. protection of civil rights, the Court should endeavor to construe Plaintiff's

2. Pleadings without regard to technicalities." Puckett v. Cox, 456 F. 2d 233 (1972)

3. (6th Cir. USCA) It was held that a pro se complaint requires a less stringent

4. reading than one drafted by a lawyer per Justice Black in Conley v. Gibson (see

5. case listed above, Pro Se Rights Section). Roadway Express v. Pipe, 447 U.S. 752

6. at 757 (1982) "Due to sloth, inattention or desire to seize tactical advantage,

7. lawyers have long engaged in dilatory practices... the glacial pace of much

8. litigation breeds frustration with the Federal Courts and ultimately, disrespect for

9. the law." Sherar v. Cullen, 481 F. 2d 946 (1973) "There can be no sanction or

10. penalty imposed upon one because of his exercise of Constitutional Rights."

11. Schware v. Board of Examiners, United State Reports 353 U.S. pages 238, 239.

12. "The practice of law cannot be licensed by any state/State." Sims v. Aherns, 271

13. SW 720 (1925)

14. "The practice of law is an occupation of common right." CONSTITUTIONAL

15. RIGHTS: Boyd v. United, 116 U.S. 616 at 635 (1885) Justice Bradley, "It may be

16. that it is the obnoxious thing in its mildest form; but illegitimate and

17. unconstitutional practices get their first footing in that way; namely, by silent

18. approaches and slight deviations from legal modes of procedure. This can only be

19. obviated by adhering to the rule that constitutional provisions for the security of

42

1   persons and property should be liberally construed. A close and literal

2   construction deprives them of half their efficacy, and leads to gradual

3   depreciation of the right, as if it consisted more in sound than in substance. It is

4   the duty of the Courts to be watchful for the Constitutional Rights of the Citizens,

5   and against any stealthy encroachments thereon. Their motto should be Obsta

6   Principiis."Downs v. Bidwell, 182 U.S. 244 (1901) "It will be an evil day for

7   American Liberty if the theory of a government outside supreme law finds

8   lodgment in our constitutional jurisprudence. No higher duty rests upon this

9   Court than to exert its full authority to prevent all violations of the principles of

10  the Constitution."Gomillion v. Lightfoot, 364 U.S. 155 (1966), cited also in Smith v.

11  Allwright, 321 U.S. 649.644 "Constitutional 'rights' would be of little value if they

12  could be indirectly denied."Juliard v. Greeman, 110 U.S. 421 (1884) Supreme

13  Court Justice Field, "There is no such thing as a power of inherent sovereignty in

14  the government of the United States... In this country, sovereignty resides in the

15  people, and Congress can exercise power which they have not, by their

16  Constitution, entrusted to it. All else is withheld."Mallowy v. Hogan, 378 U.S. 1

17  "All rights and safeguards contained in the first eight amendments to the federal

18  Constitution are equally applicable."Miranda v. Arizona, 384 U.S. 426, 491; 86 S.

19  Ct. 1603

1 "Where rights secured by the Constitution are involved, there can be no 'rule

2 making' or legislation which would abrogate them." Norton v. Shelby County, 118

3 U.S. 425 p. 442 "An unconstitutional act is not law; it confers no rights; it imposes

4 no duties; affords no protection; it creates no office; it is in legal contemplation,

5 as inoperative as though it had never been passed." Perez v. Brownell, 356 U.S.

6 44, 7; 8 S. Ct. 568, 2 L. Ed. 2d 603 (1958) "...in our country the people are

7 sovereign and the government cannot sever its relationship to them by taking

8 away their citizenship."Sherar v. Cullen, 481 F. 2d 946 (1973) "There can be no

9 sanction or penalty imposed upon one because of his exercise of constitutional

10 rights." Simmons v. United States, 390 U.S. 377 (1968) "The claim and exercise of

11 a Constitution right cannot be converted into a crime"... "a denial of them would

12 be a denial of due process of law".Warnock v. Pecos County, Texas., 88 F3d 341

13 (5th Cir. 1996) Eleventh Amendment does not protect state officials from claims

14 for prospective relief when it is alleged that state officials acted in violation of

15 federal law.CORRUPTION OF AUTHORITY:Burton v. United States, 202 U.S. 344, 26

16 S. Ct. 688 50 L.Ed 1057 United States Senator convicted of, among other things,

17 bribery. Butz v. Economou, 98 S. Ct. 2894 (1978); United States v. Lee, 106 U.S. at

18 220, 1 S. Ct. at 261 (1882) "No man [or woman] in this country is so high that he is

19 above the law. No officer of the law may set that law at defiance with impunity.

44

All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it."

*Cannon v. Commission on Judicial Qualifications, (1975) 14 Cal. 3d 678, 694 Acts in excess of judicial authority constitutes misconduct, particularly where a judge deliberately disregards the requirements of fairness and due process.*Geiler v. Commission on Judicial Qualifications, (1973) 10 Cal.3d 270, 286 Society's commitment to institutional justice requires that judges be solicitous of the rights of persons who come before the court.*Gonzalez v. Commission on Judicial Performance, (1983) 33 Cal. 3d 359, 371, 374 Acts in excess of judicial authority constitutes misconduct, particularly where a judge deliberately disregards the requirements of fairness and due process.Olmstad v. United States, (1928) 277 U.S. 438 "Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."Owen v. City of Independence  "The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury."Perry v. United States, 204 U.S. 330, 358 "I do not understand the government to contend that it is any less bound by the obligation than a private individual would be..." "It is not the function of our government to keep the citizen from falling into error; it is the function of the citizen to keep the

1  government from falling into error."*Ryan v. Commission on Judicial

2  Performance, (1988) 45 Cal. 3d 518, 533 Before sending a person to jail for

3  contempt or imposing a fine, judges are required to provide due process of law,

4  including strict adherence to the procedural requirements contained in the Code

5  of Civil Procedure. However inept Cochran's choice of words, he has set out

6  allegations supported by affidavits, and nowhere denied, that Kansas refused him

7  privileges of appeal which it afforded to others. *** The State properly concedes

8  that if the alleged facts pertaining to the suppression of Cochran's appeal were

9  disclosed as being true, ... there would be no question but that there was a

10  violation of the equal protection clause of the Fourteenth Amendment."Duncan v.

11  Missouri, 152 U.S. 377, 382 (1894) Due process of law and the equal protection of

12  the laws are secured if the laws operate on all alike, and do not subject the

13  individual to an arbitrary exercise of the powers of government."Giozza v.

14  Tiernan, 148 U.S. 657, 662 (1893), Citations Omitted "Undoubtedly it (the

15  Fourteenth Amendment) forbids any arbitrary deprivation of life, liberty or

16  property, and secures equal protection to all under like circumstances in the

17  enjoyment of their rights... It is enough that there is no discrimination in favor of

18  one as against another of the same class. ...And due process of law within the

19  meaning of the [Fifth and Fourteenth] amendment is secured if the laws operate

46

1   on all alike, and do not subject the individual to an arbitrary exercise of the

2   powers of government."Kentucky Railroad Tax Cases, 115 U.S. 321, 337 (1885)

3   "The rule of equality... requires the same means and methods to be applied

4   impartially to all the constituents of each class, so that the law shall operate

5   equally and uniformly upon all persons in similar circumstances".Truax v.

6   Corrigan, 257 U.S. 312, 332 "Our whole system of law is predicated on the general

7   fundamental principle of equality of application fo the law. 'All men are equal

8   before the law,' "This is a government of laws and not of men,' 'No man is above

9   the law,' are all maxims showing the spirit in which legislatures, executives, and

10  courts are expected to make, execute and apply laws. But the framers and

11  adopters of the (Fourtheenth) Amendment were not content to depend... upon

12  the spirit of equality which might not be insisted on by local public opinion. They

13  therefore embodied that spirit in a specific guaranty." There is a general rule that

14  a ministerial officer who acts wrongfully, although in good faith, is nevertheless

15  liable in a civil action and cannot claim the immunity of the sovereign.Davis v.

16  Burris, 51 Ariz. 220, 75 P.2d 689 (1938) A judge must be acting within his

17  jurisdiction as to subject matter and person, to be entitled to immunity from civil

18  action for his acts.Forrester v. White, 484 U.S. at 227-229, 108 S. Ct. at 544-545

19  (1987); Westfall v.Erwin, 108 S. Ct. 580 (1987); United States v. Lanier (March

47

1  1997) Constitutionally and in fact of law and judicial rulings, state-federal

2  "magistrates-judges" or any government actors, state or federal, may now be held

3  liable, if they violate any Citizen's Constitutional rights, privileges, or immunities,

4  or guarantees; including statutory civil rights. A judge is not immune for tortious

5  acts committed in a purely Administrative, non-judicial capacity.Gregory v.

6  Thompson, F.2d 59 (C.A. Ariz. 1974) Generally, judges are immune from suit for

7  judicial acts within or in excess of their jurisdiction even if those acts have been

8  done maliciously or corruptly; the only exception being for acts done in the clear

9  absence of all jurisdiction.Hoffsomer v. Hayes, 92 Okla 32, 227 F. 417, We

10  conclude that judicial immunity is not a bar to relief against a judicial officer

11  acting in her [his] judicial capacity."Mireles v. Waco, 112 S. Ct. 286 at 288 (1991) A

12  judge is not immune for tortious acts committed in a purely Administrative, non-

13  judicial capacity; however, even in a case involving a particular attorney not

14  assigned to him, he may reach out into the hallway, having his deputy use

15  "excessive force" to haul the attorney into the courtroom for chastisement or

16  even incarceration. A Superior Court Judge is broadly vested with "general

17  jurisdiction." Provided the judge is not divested of all jurisdiction, he may have his

18  actions excused as per this poor finding. Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct.

19  1683, 1687 (1974) Note: By law, a judge is a state officer. The judge then acts not

48

as a judge, but as a private individual (in his person). When a judge acts as a

trespasser of the law, when a judge does not follow the law, the Judge loses

subject-matter jurisdiction and the judges' orders are not voidable, but VOID, and

of no legal force or effect.The U.S. Supreme Court stated that "when a state

officer acts under a state law in a manner violative of the Federal Constitution, he

comes into conflict with the superior authority of that Constitution, and he is in

that case stripped of his official or representative character and is subjected in his

person to the consequences of his individual conduct. The State has no power to

impart to him any immunity from responsibility to the supreme authority of the

United States."Stump v. Sparkman, id., 435 U.S. 349 Some Defendants urge that

any act "of a judicial nature" entitles the Judge to absolute judicial immunity. But

in a jurisdictional vacuum (that is, absence of all jurisdiction) the second prong

necessary to absolute judicial immunity is missing. A judge is not immune for

tortious acts committed in a purely Administrative, non-judicial capacity.Rankin v.

Howard, 633 F.2d 844 (1980), I consider all defendants in this case to be

conspirators against

my rights to due process, also most defendants are

accessories to filing a fraudulent police report which my

49

1   liberty was stolen due to malicious criminal prosecution all

2   defendants are accessories to the other defendants civil and

3   criminal crimes. Also, accessories to multiple RICO violation.

4   The right for federal jurisdiction over my criminal trespass in state court in case

5   complaint number (2020-0354434) (warrant number GS919406),

6   Pulliam v. Allen, 466 U.S. 522 (1984) (declaratory judgement)

7   Which reads,

8   Judicial immunity is not a bar to prospective injunctive relief against a judicial

9   officer, such as petitioner, acting in her judicial capacity. Pp. 466 U. S. 528-543.

10  (a) Common law principles of judicial immunity were incorporated into the United

11  States judicial system, and should not be abrogated absent clear legislative intent

12  to do so. Although there were no injunctions against common law judges, there is

13  a common law parallel to the § 1983 injunction at issue here in the collateral

14  prospective relief available against judges through the use of the King's

15  prerogative writs in England. The history of these writs discloses that the common

16  law rule of judicial immunity did not include immunity from prospective collateral

17  relief. Pp. 466 U. S. 528-536.

1 (b) The history of judicial immunity in the United States is fully consistent with the

2 common law experience. There never has been a rule of absolute judicial

3 immunity from prospective relief, and there is no evidence that the absence of

4 that immunity has had a chilling effect on judicial independence. Limitations on

5 obtaining equitable relief serve to curtail or prevent harassment of judges

6 through suits against them by disgruntled litigants. Collateral injunctive relief

7 against a judge, particularly when that relief is available through § 1983, also

8 raises a concern relating to the proper functioning of federal-state relations, but

9 that

10 Page 466 U. S. 523

11 concern has been addressed directly as a matter of comity and federalism,

12 independent of principles of judicial immunity. While there is a need for restraint

13 by federal courts called upon to enjoin actions of state judicial officers, there is no

14 support for a conclusion that Congress intended to limit the injunctive relief

15 available under § 1983 in a way that would prevent federal injunctive relief

16 against a state judge. Rather, Congress intended § 1983 to be an independent

17 protection for federal rights, and there is nothing to suggest that Congress

intended to expand the common law doctrine of judicial immunity to insulate state judges completely from federal collateral review. Pp. 466 U. S. 536-543.

2. Judicial immunity is no bar to the award of attorney's fees under the Civil Rights Attorney's Fees Awards Act. Congress has made clear in the Act its intent that attorney's fees be available in any action to enforce § 1983. And the legislative history confirms Congress' intent that an attorney's fee award be made available even when damages would be barred or limited by immunity doctrines. Pp. 466 U. S. 543-544.

690 F.2d 376, affirmed.

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, and STEVENS, JJ., joined. POWELL, J., filed a dissenting opinion, in which BURGER, C.J., and REHNQUIST and O'CONNOR, JJ., joined, post, p. 466 U. S. 544. Page 466 U. S. 524

The Anti-Injunction Act contemplates three circumstances under which its bar on injunctions of state-court proceedings does not apply. Specifically, federal courts are not barred from enjoining proceedings (1) "as expressly authorized by Act of Congress," (2) "when necessary in aid of" the federal court's jurisdiction, or (3) "to protect or effectuate federal court judgments."[40] These three exceptions are

52

1    known as, respectively, the Expressly Authorized Exception, the Aid of Jurisdiction

2    Exception, and the Relitigation Exception. The Supreme Court has stated that the

3    three statutory exceptions are exclusive and "should not be enlarged by loose

4    statutory construction."[41]

5    under the Expressly Authorized Exception, federal courts can enjoin state court

6    proceedings "as expressly authorized by Act of Congress." The theory behind the

7    exception is that, by expressly allowing stays of state court proceedings pursuant

8    to certain statutes, Congress validly overrides the limitation that it imposed in the

9    Anti-Injunction Act. To fall within the exception, the Supreme Court has held, a

10   statute "need not expressly refer to" the AIA, but it must "clearly create a federal

11   right or remedy enforceable in a federal court [that] could be given its intended

12   scope only by the stay of a state court proceeding."

13   The major Supreme Court cases interpreting the Expressly Authorized Exception

14   are Mitchum v. Foster[45] and Vendo Co. v. Lektro-Vend Corp.[46]

15

16    Mitchum v. Foster (1972): 42 U.S.C. § 1983 allows a person to sue in federal

17   court for violations of federal constitutional rights. In Mitchum, the Supreme

18   Court held that Section 1983 "expressly authorizes" federal injunctions of state

53

1 proceedings because its purpose was to "interpose the federal courts between

2 the States and the people" and to enforce the Fourteenth Amendment against

3 state action, "whether that action be executive, legislative, or judicial." Thus, the

4 federal district court in Mitchum could lawfully issue an injunction preventing a

5 Florida state court from issuing a temporary restraining order that violated

6 Mitchum's First and Fourteenth Amendment rights.

7 Vendo Co. v. Lektro-Vend Corp. (1977): Section 16 of the Clayton Antitrust Act

8 allows federal suits for injunctive relief against unlawfully anticompetitive

9 behavior. In Vendo Co., the Supreme Court held that Section 16 was not an

10 "expressly authorized" exception to the AIA. Then-Justice William Rehnquist's

11 plurality opinion reasoned that a federal court's power to enjoin state court

12 proceedings was not necessary to give the Clayton Act "its intended scope"

13 because the Act's legislative history did not convey the same distrust of state

14 judiciaries as did Section 1983's.Justice Harry Blackmun's concurring opinion

15 argued that Section 16 should expressly authorize injunctions, but only where a

16 pending state court proceeding is itself part of a "'pattern of baseless repetitive

17 claims' that are being used as an anti-competitive device."

18 Section 1985(3) under Title 42 reaches both conspiracies under color of law

1   and conspiracies effectuated through purely private conduct. In this case

2   Plaintiff has alleged a class-based, invidiously discriminatory animus is

3   behind the conspirators' action as the court records reflect. That

4   actionable cause is the treatment of a non-lawyer pro se litigant as a

5   distinct "class-based subject" of the Court, wherein denial of equal

6   protection of the laws and denial of due process was clearly the product of

7   bias and prejudice of the Court. See Griffen v. Breckenridge, 403 U.S. 88,

8   102 (1971).

9   The U.S. Supreme Court acknowledged in Bray v. Alexandria Women's Health

10  Clinic 113 S.Ct. 753 (1993) that the standard announced in Griffen was not

11  restricted to "race" discrimination. It is therefore reasonable to assume

12  that 1985(3) may be used for "class-based" claims other than race as alleged

13  in this case. It is also important to note in Bray the U.S. Supreme Court's

14  interpretation of the requirement under 1985(3) that a private conspiracy be

15  one "for the purpose of depriving... any person or "class" of persons of the

1  equal protection of the laws, or of equal privileges and immunities under

2  the laws, which the Court said mandates "an intent to deprive persons of a

3  right guaranteed against private impairment.

4  The U.S. Supreme Court in Griffen emphasized 1985(3)

5  legislative history was directed to the prevention of deprivations which

6  shall attack the equality of rights of American citizens; that any violation

7  of the right, the animus and effect of which is to strike down the citizen,

8  to the end that he may not enjoy equality of rights as contrasted with his

9  and other citizens' rights, shall be within the scope of remedies... Id. at 100.

10

11  Supreme Court has ruled that "private parties" may be held to the same

12  standard of "state actors" in cases such as the instant cause where the

13  final and decisive act was carried out in conspiracy with a state official.

14  See Dennis v. Sparks, 449 U.S. 24, 101 S. Ct., 183 and Adickes v. S.H. Kress

15  & Co., 398 U.S. 144, 90 S. Ct. 1598.

1

2    Jurisdictional Issues:

3    It is proper for this District Court to take Jurisdiction of any civil

4    action authorized by law to be commenced by any person. See Title 28 Section

5    1343 (1)(2)(3)(4) .

6    Jurisdiction is proper under Title 28 Sections 1332, 1335, 1357, 1441 and 1603.

7    he First issue is "Convenience" and second issue is the "interest-of-

8    justice" standard under 28 USCA 1406.

9

10   Btw all judges orders in all cases vs me and swift are void by law,

11   (1) No petition in the record of the case, Brown v. VanKeuren,

12   340 Ill. 118,122 (1930).

13   (2) Defective petition filed, Same case as above.

14   (3) Fraud committed in the procurement of jurisdiction, Fredman

15   Brothers Furniture v. Dept. of Revenue, 109 Ill. 2d 202, 486 N.E. 2d

1   893(1985)

2   (4) Fraud upon the court, In re Village of Willowbrook, 37 Ill,

3   App. 3d 393(1962)

4   (5) Judge does not follow statutory procedure, Armstrong v.

5   Obucino, 300 Ill 140, 143 (1921)

6   (6) Unlawful activity of a judge, Code of Judicial Conduct.

7   (7) Violation of due process, Johnson v. Zerbst, 304 U.S. 458,

8   58 S.Ct. 1019(193 ; Pure Oil Co. v. City of Northlake , 10 Ill.2d 241, 245,

9   140 N.E. 2d 289 (1956); Hallberg v Goldblatt Bros., 363 Ill 25 (1936), ( If

10   the court exceeded it's statutory authority. Rosenstiel v. Rosenstiel, 278

11   F. Supp. 794 (S.D.N.Y. 1967)

12   (8) One or more actions violated 11 U.S.C. 362(a), in re

13   Garcia, 109 B.R. 335 (N.D> Illinois, 1989).

14   (9) No proper pleadings presented a justiciable issue to the

15   court, Ligon v. Williams, 264 Ill. App 3d 701, 637 N.E. 2d 633 (1st Dist.

1994,

(10) A complaint states no cognizable cause of action against that

party, Charles v. Gore, 248 Ill App. 3d 441, 618 N.E. 2d 554 (1st. Dist.

1993)

(11) A person/law firm prohibited by law to practice law in that

jurisdiction represented a litigant before the court.

(12) The judge engaged in bribery (the Alemann cases, Bracey v

Warden , U.S. Supreme Court No. 96-6133(June 9, 1997)

(13) No one properly issued a summons.

(14) No one made service of process pursuant to statute and Supreme

Courth Rules, Janove v. Bacon, 6 Ill. 2d 245, 249, 218 N.E. 2d 706, 708

(1953)

(15) Someone did not comply with the rules of the Circuit court.

(16) Someone did not comply with the local rules of the special

court (one where the judge does not act impartially, Bracey v. Warden, U.S.

1    Supreme Court No. 96-6133(June 9, 1997)

2    (17) The statute is vague, People v. Williams, 638 N.E. 2d 207 (1st

3    Dist. (1994)

4    (18) The movant did not give proper notice to all parties, Wilson v.

5    Moore, 13 Ill. App. 3d 632, 301 N.E. 2d 39 (1st Dist. (1973)

6    (19) A judge based an order/judgment on a void order/judgment,

7    Austin v. Smith, 312 F 2d 337, 343(1962);English v. English, 72 Ill. App. 3d

8    736, 393 N.E. 2d 18 (1st Dist. 1979) or

9    (20) Someone violated the public policy of the State of Illinois,

10   Martin-Tregona v Roderick, 29 Ill. App. 3d 553, 331 N.E. 2d 100 (1st Dist.

11   1975)

12   Many public employees have serious defects in their oath and appointment

13   documents, and many do not have those documents on record as required by

14   law. The wise litigant will obtain certified copies of all such documents

15   for all officers of the court (judges, clerk, prosecutors or opposing

60

1    counsel, and bailiffs), and move for the disqualification of any and all for

2    whom valid oath and appointment documents do not exist.

3    The judge validly holds office if and only if a copy of the judge's oath of

4    office exists, and you can rightly demand that the proper final oath sworn

5    or affirmed upon taking office situates in the judge's chambers. You can go

6    to his office and demand to see a copy of his oath of office at any time.

7    The federal laws covering judges and other public officials are to be found

8    at 5 U.S.C. 3331, 28 U.S.C. 543, and 5 U.S.C. 1983. States typically have

9    similar laws. A judge trespasses upon the court unless he complies with all

10    of the provisions of relevant law. Once a proven trespasser upon the court

11    (upon the law) not one of his judgments, pronouncements or orders have

12    validity. All constitute nullities and have void status.

13

14    **Specific relief requested,**

15    **I Daniel James silva pray this court grants for the following relief**

**Declaratory Judgement**

A1. Was my attempted citizen's arrest on Taylor Alison swift at 2201 Harding

place (constitutional)?

A2. Was my arrest by Nashville metro at 2201 Harding place(unconstitutional)?

A.3  was judge Hinkle's order (constitutional)? ( DKT118 Filed & Entered:

06/18/2020 dismissing my case 4:19-cv-00286-RH-MJF SILVA v. SWIFT et al by a

motion of Taylor swift filed by a lawyer(Baldridge) who was named in the suit at

one time in the suit, conspired against my rights to due process, and without

even 1 fair hearing over 7 cases for nearly 4 years. And the merits to the lawsuit

where felonious obstruction and conspiracy against rights.


**Memorandum of law for a Declaratory Judgement**

**Rule 57. Declaratory Judgment**

These rules govern the procedure for obtaining a declaratory judgment under 28

U.S.C. §2201. Rules 38 and 39 govern a demand for a jury trial. The existence of

another adequate remedy does not preclude a declaratory judgment that is

otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 30, 2007, eff. Dec. 1, 2007.)

The fact that a declaratory judgment may be granted "whether or not further relief is or could be prayed" indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding. Inasmuch as it often involves only an issue of law on undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion, as provided for in California (Code Civ.Proc. (Deering, 1937) §1062a), Michigan (3 Comp.Laws (1929) §13904), and Kentucky (Codes (Carroll, 1932) Civ.Pract. §639a–3).

The "controversy" must necessarily be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936). The existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared. The petitioner must have a practical interest in the

63

declaration sought and all parties having an interest therein or adversely
affected must be made parties or be cited. A declaration may not be rendered if
a special statutory proceeding has been provided for the adjudication of some
special type of case, but general ordinary or extraordinary legal remedies,
whether regulated by statute or not, are not deemed special statutory
proceedings.

When declaratory relief will not be effective in settling the controversy, the
court may decline to grant it. But the fact that another remedy would be equally
effective affords no ground for declining declaratory relief. The demand for
relief shall state with precision the declaratory judgment desired, to which may
be joined a demand for coercive relief, cumulatively or in the alternative; but
when coercive relief only is sought but is deemed ungrantable or inappropriate,
the court may sua sponte, if it serves a useful purpose, grant instead a
declaration of rights. Hasselbring v. Koepke, 263 Mich. 466, 248 N.W. 869, 93
A.L.R. 1170 (1933). Written instruments, including ordinances and statutes, may
be construed before or after breach at the petition of a properly interested
party, process being served on the private parties or public officials interested.
In other respects the Uniform Declaratory Judgment Act affords a guide to the
scope and function of the Federal act. Compare Aetna Life Insurance Co. v.

64

1 **Haworth, 300 U.S. 227, 57 S.Ct. 461 (1937); Nashville, Chattanooga & St. Louis**

2 **Ry. v. Wallace, 288 U.S. 249 (1933); Gully, Tax Collector v. Interstate Natural Gas**

3 **Co., 82 F.(2d) 145 (C.C.A.5th, 1936); Ohio Casualty Ins. Co. v. Plummer, 13**

4 **F.Supp. 169 (S.D.Tex., 1935); Borchard, Declaratory Judgments (1934), passim.**

5

6

7 **Injunctive relief**

8 **Please stay criminal case (complaint number (2020-0354434) warrant**

9 **number (GS919406) until this civil rights case here in Nashville is over.**

10

11 Memorandum of law for Injunctive relief

12 U.S. Supreme Court

13 Pulliam v. Allen, 466 U.S. 522 (1984)

14 Pulliam v. Allen

15 No. 82-1432

16 Argued November 2, 1983

1    Decided May 14, 1984

2    466 U.S. 522

3    Syllabus

4

5    After respondents were arrested for nonmailable misdemeanors, petitioner, a

6    Magistrate in a Virginia county, imposed bail, and when respondents were unable

7    to meet the bail, petitioner committed them to jail. Subsequently, respondents

8    brought an action against petitioner in Federal District Court under 42 U.S.C. §

9    1983, claiming that petitioner's practice of imposing bail on persons arrested for

10   nonjailable offenses under Virginia law and of incarcerating those persons if they

11   could not meet the bail was unconstitutional. The court agreed and enjoined the

12   practice, and also awarded respondents costs and attorney's fees under the Civil

13   Rights Attorney's Fees Awards Act of 1976. Determining that judicial immunity did

14   not extend to injunctive relief under § 1983 and that prospective injunctive relief

15   properly had been awarded against petitioner, the Court of Appeals affirmed the

16   award of attorney's fees.

17   Held:

18

1.  Judicial immunity is not a bar to prospective injunctive relief against a judicial

officer, such as petitioner, acting in her judicial capacity. Pp. 466 U. S. 528-543.

(a) Common law principles of judicial immunity were incorporated into the United

States judicial system, and should not be abrogated absent clear legislative intent

to do so. Although there were no injunctions against common law judges, there is

a common law parallel to the § 1983 injunction at issue here in the collateral

prospective relief available against judges through the use of the King's

prerogative writs in England. The history of these writs discloses that the common

law rule of judicial immunity did not include immunity from prospective collateral

relief. Pp. 466 U. S. 528-536.

(b) The history of judicial immunity in the United States is fully consistent with the

common law experience. There never has been a rule of absolute judicial

immunity from prospective relief, and there is no evidence that the absence of

that immunity has had a chilling effect on judicial independence. Limitations on

obtaining equitable relief serve to curtail or prevent harassment of judges

through suits against them by disgruntled litigants. Collateral injunctive relief

against a judge, particularly when that relief is available through § 1983, also

67

1  raises a concern relating to the proper functioning of federal-state relations, but

2  that

3  Page 466 U. S. 523

4  concern has been addressed directly as a matter of comity and federalism,

5  independent of principles of judicial immunity. While there is a need for restraint

6  by federal courts called upon to enjoin actions of state judicial officers, there is no

7  support for a conclusion that Congress intended to limit the injunctive relief

8  available under § 1983 in a way that would prevent federal injunctive relief

9  against a state judge. Rather, Congress intended § 1983 to be an independent

10  protection for federal rights, and there is nothing to suggest that Congress

11  intended to expand the common law doctrine of judicial immunity to insulate

12  state judges completely from federal collateral review. Pp. 466 U. S. 536-543.

13  2. Judicial immunity is no bar to the award of attorney's fees under the Civil Rights

14  Attorney's Fees Awards Act. Congress has made clear in the Act its intent that

15  attorney's fees be available in any action to enforce § 1983. And the legislative

16  history confirms Congress' intent that an attorney's fee award be made available

17  even when damages would be barred or limited by immunity doctrines. Pp. 466

18  U. S. 543-544.

1 690 F.2d 376, affirmed.

2 BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, WHITE,

3 MARSHALL, and STEVENS, JJ., joined. POWELL, J., filed a dissenting opinion, in

4 which BURGER, C.J., and REHNQUIST and O'CONNOR, JJ., joined, post, p. 466 U. S.

5 544.

6 Page 466 U. S. 524

7 42 USC 1983 - Availability of Equitable Relief Against Judges. Judges have given

8 themselves judicial immunity for their judicial functions. Judges have no judicial

9 immunity for criminal acts, aiding, assisting, or conniving with others who

10 perform a criminal act or for their administrative/ministerial duties, or for

11 violating a citizen's constitutional rights. When a judge has a duty to act, he does

12 not have discretion - he is then not performing a judicial act; he is performing a

13 ministerial act. Nowhere was the judiciary given immunity, particularly nowhere

14 in Article III; under our Constitution, if judges were to have immunity, it could only

15 possibly be granted by amendment (and even less possibly by legislative act), as

16 Art. I, Sections 9 & 10, respectively, in fact expressly prohibit such, stating, "No

17 Title of Nobility shall be granted by the United States" and "No state shall... grant

18 any Title of Nobility." Most of us are certain that Congress itself doesn't

69

understand the inherent lack of immunity for judges. Article III, Sec. 1, "The Judicial Power of the United States shall be vested in one supreme court, and in such inferior courts, shall hold their offices during good behavior." Tort & Insurance Law Journal, Spring 1986 21 n3, p 509-516, "Federal tort law: judges cannot invoke judicial immunity for acts that violate litigants' civil rights." - Robert Craig Waters. Ableman v. Booth, 21 Howard 506 (1859) "No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence." Chandler v. Judicial Council of the 10th Circuit, 398 U.S. 74, 90 S. Ct. 1648, 26 L. Ed. 2d 100

Justice Douglas, in his dissenting opinion at page 140 said, "If (federal judges) break the law, they can be prosecuted." Justice Black, in his dissenting opinion at page 141) said, "Judges, like other people, can be tried, convicted and punished for crimes... The judicial power shall extend to all cases, in law and equity, arising under this Constitution".Cooper v. Aaron, 358 U.S. 1, 78 S. Ct. 1401 (1958) Note: Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the supreme law of the land. The judge is engaged in acts of treason. The U.S.

1    Supreme Court has stated that "no state legislator or executive or judicial officer

2    can war against the Constitution without violating his undertaking to support it".

3    See also In Re Sawyer, 124 U.S. 200 (188); U.S. v. Will, 449 U.S. 200, 216, 101 S. Ct.

4    471, 66 L. Ed. 2d 392, 406 (1980); Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5

5    L. Ed 257 (1821).Cooper v. O'Conner, 99 F.2d 133 There is a general rule that a

6    ministerial officer who acts wrongfully, although in good faith, is nevertheless

7    liable in a civil action and cannot claim the immunity of the sovereign.Davis v.

8    Burris, 51 Ariz. 220, 75 P.2d 689 (1938) A judge must be acting within his

9    jurisdiction as to subject matter and person, to be entitled to immunity from civil

10   action for his acts.Forrester v. White, 484 U.S. at 227-229, 108 S. Ct. at 544-545

11   (1987); Westfall v.Erwin, 108 S. Ct. 580 (1987); United States v. Lanier (March

12   1997) Constitutionally and in fact of law and judicial rulings, state-federal

13   "magistrates-judges" or any government actors, state or federal, may now be held

14   liable, if they violate any Citizen's Constitutional rights, privileges, or immunities,

15   or guarantees; including statutory civil rights. A judge is not immune for tortious

16   acts committed in a purely Administrative, non-judicial capacity.Gregory v.

17   Thompson, F.2d 59 (C.A. Ariz. 1974) Generally, judges are immune from suit for

18   judicial acts within or in excess of their jurisdiction even if those acts have been

71

done maliciously or corruptly; the only exception being for acts done in the clear absence of all jurisdiction.Hoffsomer v. Hayes, 92 Okla 32, 227 F. 417

"The courts are not bound by an officer's interpretation of the law under which he presumes to act."Marbury v. Madison, 5 U.S. (2 Cranch) 137, 180 (1803) "... the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void, and that courts, as well as other departments, are bound by that instrument." "In declaring what shall be the supreme law of the land, the Constitution itself is first mentioned; and not the laws of the United States generally, but those only which shall be made in pursuance of the Constitution, have that rank". "All law (rules and practices) which are repugnant to the Constitution are VOID". Since the 14th Amendment to the Constitution states "NO State (Jurisdiction) shall make or enforce any law which shall abridge the rights, privileges, or immunities of citizens of the United States nor deprive any citizens of life, liberty, or property, without due process of law, ... or equal protection under the law", this renders judicial immunity unconstitutional. Piper v. Pearson, 2 Gray 120, cited in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872) "Where there is no jurisdiction, there can be no discretion, for discretion is incident to jurisdiction."Pulliam v. Allen, 466 U.S. 522

1 (1984); 104 S. Ct. 1781, 1980, 1981, and 1985 In 1996, Congress passed a law to

2 overcome this ruling which stated that judicial immunity doesn't exist; citizens

3 can sue judges for prospective injunctive relief. "Our own experience is fully

4 consistent with the common law's rejection of a rule of judicial immunity. We

5 never have had a rule of absolute judicial immunity. At least seven circuits have

6 indicated affirmatively that there is no immunity... to prevent irreparable injury to

7 a citizen's constitutional rights..." "Subsequent interpretations of the Civil Rights

8 Act by this Court acknowledge Congress' intent to reach unconstitutional actions

9 by all state and federal actors, including judges... The Fourteenth Amendment

10 prohibits a state [federal] from denying any person [citizen] within its jurisdiction

11 the equal protection under the laws. Since a State [or federal] acts only by its

12 legislative, executive or judicial authorities, the constitutional provisions must be

13 addressed to those authorities, including state and federal judges..."

14 "We conclude that judicial immunity is not a bar to relief against a judicial officer

15 acting in her [his] judicial capacity."Mireles v. Waco, 112 S. Ct. 286 at 288 (1991) A

16 judge is not immune for tortious acts committed in a purely Administrative, non-

17 judicial capacity; however, even in a case involving a particular attorney not

18 assigned to him, he may reach out into the hallway, having his deputy use

19 "excessive force" to haul the attorney into the courtroom for chastisement or

73

1  even incarceration. A Superior Court Judge is broadly vested with "general

2  jurisdiction." Provided the judge is not divested of all jurisdiction, he may have his

3  actions excused as per this poor finding. Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct.

4  1683, 1687 (1974) Note: By law, a judge is a state officer. The judge then acts not

5  as a judge, but as a private individual (in his person). When a judge acts as a

6  trespasser of the law, when a judge does not follow the law, the Judge loses

7  subject-matter jurisdiction and the judges' orders are not voidable, but VOID, and

8  of no legal force or effect.The U.S. Supreme Court stated that "when a state

9  officer acts under a state law in a manner violative of the Federal Constitution, he

10  comes into conflict with the superior authority of that Constitution, and he is in

11  that case stripped of his official or representative character and is subjected in his

12  person to the consequences of his individual conduct. The State has no power to

13  impart to him any immunity from responsibility to the supreme authority of the

14  United States."Stump v. Sparkman, id., 435 U.S. 349 Some Defendants urge that

15  any act "of a judicial nature" entitles the Judge to absolute judicial immunity. But

16  in a jurisdictional vacuum (that is, absence of all jurisdiction) the second prong

17  necessary to absolute judicial immunity is missing. A judge is not immune for

18  tortious acts committed in a purely Administrative, non-judicial capacity.Rankin v.

19  Howard, 633 F.2d 844 (1980) The Ninth Circuit Court of Appeals reversed an

74

Arizona District Court dismissal based upon absolute judicial immunity, finding that both necessary immunity prongs were absent; later, in Ashelman v. Pope, 793 F.2d 1072 (1986), the Ninth Circuit, en banc, criticized the "judicial nature" analysis it had published in Rankin as unnecessarily restrictive. But Rankin's ultimate

result was not changed, because Judge Howard had been independently divested of absolute judicial immunity by his complete lack of jurisdiction's. Fidelity & Guaranty Co. (State use of), 217 Miss. 576, 64 So. 2d 697 When a judicial officer acts entirely without jurisdiction or without compliance with jurisdiction requisites he may be held civilly liable for abuse of process even though his act involved a decision made in good faith, that he had jurisdiction. U.S. v. Lee, 106 U.S. 196, 220 1 S. Ct. 240, 261, 27 L. Ed 171 (1882) "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it." "It is the only supreme power in our system of government, and every man who, by accepting office participates in its functions, is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes on the exercise of the authority which it gives."

1

2

3                          **Monetary punitive damages**

4

5                          **General Monetary damages**

6

7              **For monetary damages I pray and request the following**

8

9    **From each defendant 1,000 dollars (car towed 250 dollars, 1 night hotel 100**

10   **dollars and lost profits for the time spent in Nashville, 1000 dolars base**

11   **damages**

12   **I also request a prorated loss income for working on this case the last 3 months,**

13   **In 2018 the mid income for the city of nashville was $65,919 so ¼ of that is**

14   **16,479.75, so          17,479.75 dollars from each defendant**

15                          **Punitive damages**

**1**   For the clearly obvious prolonged criminal actions taken by all defendant is this

**2**   case I request the following punitive damages

**3**   For defendants

**4**   Scott Kingsley Swift

**5**   Austin swift

**6**   Joseph Matthew Alwyn

**7**   Jay schaudies

**8**   Harding Trust group

**9**   Tennessee metro PD

**10**

**11**   I request general damages in the amount of  17,479.75 dollars from each

**12**   defendant listed about plus 500,000 usd in punitive damages.

**13**   I request 100,000 in punitive damages from  Judge Dianne Turner

**14**   Judge Robert L. Hinkle due to there net wealth not being nearly as hi as the

**15**   other defendants, so for the entire damages,

**16**   .Scott Kingsley Swift – 517,479.75 us dollars

1    **Austin swift- 517,479.75 us dollars**

2    **Joseph Matthew Alwyn- 517,479.75 us dollars**

3    **Jay schaudies- 517,479.75 us dollars**

4    **Harding Trust group - 517,479.75 us dollars**

5    **Tennessee metro PD- 2,587,398.75 (x times 5 officers)**

6    **Judge Dianne Turner- 117,473.15 us dollars**

7    **Judge Robert L. Hinkle 117,473.15 us dollars**

8        **Grand total amount Monetary punitive damages amount**

9                **5,409,743    million dollars**

10         Memorandum of law for punitive damages

11    Punitive damages are not intended to compensate the plaintiff. Dyna-Med, Inc. v

12    FEHC (1987) 43 C3d 1379, 1387, 341 CR 67; Newport v Facts Concerts, Inc. (1981)

13    453 US 247, 266, 69 L Ed 2d 616, 631, 101 S Ct 2748. The reality, however, is that

14    the plaintiff is the party who receives the punitive damage award. Originally, this

15    was done because such awards made up for intangible harms, but with the

16    increase in other recoverable damages, such justification is less potent. Some

17    argue that the plaintiff should receive punitive damages because of the large

1  amounts of time, money, and effort expended to obtain these verdicts. The goal

2  of the law, however, is to make plaintiffs whole, not to reward them for zealous

3  litigation. Generally, the plaintiff receives the award "because there is no one else

4  to receive it." Shepherd Components, Inc. v Brice Petrides-Donohue & Assocs.,

5  Inc. (Iowa 1991) 473 NW2d 612, 619. The defendant's wealth is an important part

6  of the punitive damage's equation. In Las Palmas Assocs. v Las Palmas Center

7  Assocs. (1991)235 CA3d 1220, 1243, 1 CR2d 301, the court stated:

8  A defendant's financial condition has always been relevant to the amount of

9  punitive damages allowed. As the California Supreme Court explained in Adams v

10  Murakami (1991)54 C3d 105, 113, 284 CR 318:

11  Because punitive damages are intended to punish the wrongdoer, a wealthy

12  wrongdoer should face a higher punitive damages award than a less wealthy

13  party. Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928, 148 CR 389 ("the function

14  of deterrence . . . will not be served if the wealth of the defendant allows him or

15  her to absorb the award with little or no discomfort"). Little v Stuyvesant Life Ins.

16  Co. (1977)67 CA3d 451, 469, 136 CR 653; see also Michelson v Hamada (1994)29

17  CA4th 1566, 1595, 36 CR2d 343. [a]lthough appellate courts have sometimes used

18  the terms "wealth," "financial condition" and "net worth" interchangeably

79

[citations], clearly these terms are not synonymous. And, while "net worth" is probably the financial measurement most often used in setting the amount of punitive damages, no court has held that it is the only permissible measurement. See also Cheung v Daley (1995)35 CA4th 1673, 1677, 42 CR2d 164; Kizer v County of San Mateo (1991) 53 C3d 139, 147, 279 CR 318. In Clark v McClurg (1932) 215 C 279, 9 P2d 505, however, an award of $5000 in punitive damages was upheld when the jury left blank the space for actual damages.

In Cheung, defendant was accused of fraudulently transferring real property to evade satisfaction of a nuisance judgment against him. The jury found that plaintiff was entitled to compensatory damages in the amount of $0. The jury further found that by making the fraudulent transfers, defendant had acted with fraud, oppression, or malice, and awarded punitive damages. On appeal, the court concluded that "the rule of Mother Cobb's Chicken -- that an award of exemplary damages must be accompanied by an award of compensatory damages–is still sound. That rule cannot be deemed satisfied where the jury has made an express determination not to award compensatory damages." 35 CA4th at 1677.

Punitive damages may be awarded in a tort action arising from the parties

contractual relationship and other matters if the plaintiff demonstrates; (1) that

the defendant's conduct is actionable as independent tort; (2) the tortious

conduct is of an egregious nature; (3) the egregious conduct is directed toward

the plaintiff; (4) the defendant's conduct is part of a pattern directed at the public

generally, Conocophillips v. 261 E. Merrick Rd. Corp., 428 F.Supp.2d 111, 129

(EDNY 2006).

punitive damages should be reserved for cases where defendant acted with the

degree of malice akin to the mens rea required for most crimes, Jeffries v.

Harleston, 21 F.3d 1238, 1249, cert. granted, vacated on other grounds, 513 U.S.

996 (1994).

In federal cases, the factfinder may award punitive damages if the defendant's

conduct "was malicious, oppressive or in reckless disregard of the plaintiff's rights

Depending on the claim, federal actions impose varying burdens of proof

depending on the nature of the action.  For example, in most federal cases,

plaintiffs are only held to a "preponderance of the evidence" standard.

Daniel James Silva

Po Box 493, Colfax, NC, 27235

1  Statement to the court,

2  I've trimmed this case from 146 pages down to 95 excluding the pro se packet

3  there are 8 defendants so that an average of 11 pages per defendant, ive

4  overlooked all pages and all that remain are necessary, I mention Taylor swift and

5  dong Baldridge because they should be defendants in this case but oath braker

6  (Hinkle) made a void order stating I couldn't add their names to any new lawsuits,

7  using his authority to feloniously protect swift and Baldridge, also Id like to

8  address judge Eli J. Richardsons order (dkt 4), I don't like the words used in your

9  order 1st (It appears that the Complaint arises from Plaintiff's dissatisfaction with

10  the dismissal of litigation concerning the intellectual property of popular musician

11  Taylor Swift. **dissatisfaction with the dismissal of litigation you should reframe**

12  **the wording to state multiple RICO violations made by more that 10 federal**

13  **judges cost my to lose 189,000,000 million in a default judgement. 2nd However,**

14  **the majority of the Complaint is rambling, wholly unorganized and**

15  **incomprehensible.), Judge RICHARDSON I understand this lawsuit perfectly I**

16  **admit there was a few pages not completely needed, if you're not up for the**

17  **task of this case I suggest you reassign it. All pages that remain are needed.**

18  **<u>my statement of claim is from pages 15- to 30.</u>**

1   As per this courts order it stated I should better explain the claims aginest the

2   defendants,

3   (be better organized so that it clearly identifies the claims against each

4   Defendant) all defendants are conspirators because they have harbored taylor

5   Alison swift at their residence (Harding place), and all are accessories to making a

6   false police report that allowed me to be illegally arrested and searched going

7   against my 4th amendment rights among others, 2010 Tennessee Code

8   Title 39 - Criminal Offenses

9   Chapter 12 - General Offenses

10  Part 1 - Inchoate Offenses

11  39-12-103 - Criminal conspiracy.

12  (a)  The offense of conspiracy is committed if two (2) or more people, each having

13  the culpable mental state required for the offense that is the object of the

14  conspiracy, and each acting for the purpose of promoting or facilitating

15  commission of an offense, agree that one (1) or more of them will engage in

16  conduct that constitutes the offense.

17

1    (b) If a person guilty of conspiracy, as defined in subsection (a), knows that

2    another with whom the person conspires to commit an offense has conspired

3    with one (1) or more other people to commit the same offense, the person is

4    guilty of conspiring with the other person or persons, whether or not their

5    identity is known, to commit the offense.

6

7    (c) If a person conspires to commit a number of offenses, the person is guilty of

8    only one (1) conspiracy, so long as the multiple offenses are the object of the

9    same agreement or continuous conspiratorial relationship.

10

11   (d) No person may be convicted of conspiracy to commit an offense, unless an

12   overt act in pursuance of the conspiracy is alleged and proved to have been done

13   by the person or by another with whom the person conspired.

14

15   (e) (1) Conspiracy is a continuing course of conduct that terminates when the

16   objectives of the conspiracy are completed or the agreement that they be

17   completed is abandoned by the person and by those with whom the person

18   conspired. The objectives of the conspiracy include, but are not limited to, escape

84

1. from the crime, distribution of the proceeds of the crime, and measures, other

2. than silence, for concealing the crime or obstructing justice in relation to it.

3.   (2) Abandonment of a conspiracy is presumed if neither the person nor

4. anyone with whom the person conspired does any overt act in pursuance of the

5. conspiracy during the applicable period of limitation.

6.   (3) If an individual abandons the agreement, the conspiracy is terminated as to

7. that person only if and when the person, advises those with whom the person

8. conspired of the abandonment, or the person informs law enforcement

9. authorities of the existence of the conspiracy and of the person's participation in

10. the conspiracy.(f) It is no defense that the offense that was the object of the

11. conspiracy was not committed.(g) Nothing in this section is intended to modify

12. the evidentiary rules allowing statements of co-conspirators in furtherance of a

13. conspiracy.[Acts 1989, ch. 591, § 1 **(the false police report is more than silence),**

14. **the fake police report makes all residents at 2201 Harding place guilty of RICO**

15. **by accessory. Judge Hinkle is guilty of accessory to rico for due process**

16. **violations and judge turner denied me of all due process rights in my 3rd degree**

17. **trespass case. Warrant(GS919406).**

18.

1

Table of contents,

E1 – swifts real name to her album T.S. 1989

E2- swifts real name to her album T.S. 1989

E3- swifts real name to her album T.S. 1989

E4-order by federal judge half admitting RICO violations

E5- fraudulent trademark 1989

E6- fraudulent trademark 1989

E7- fraudulent trademark 1989 number 2

E8- fraudulent trademark 1989 number 2

E9- fraudulent trademark 1989 number 2

E 10- arrest affidavit from officer mullen admitting I was at Harding place to place swift under arrest.

Ive trimmed this case down by nearly 30% in my eyes if attempted to shorten this lawsuit as much a I can without leaving out important evidence or laws.



Thoreonon
86369455

E )



**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Jun 21 03:47:22 EDT 2020*

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# T.S. 1989

**Word Mark**   T.S. 1989

**Goods and Services**   IC 006. US 002 012 013 014 023 025 050. G & S: Metal key chains. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

IC 009. US 021 023 026 036 038. G & S: Downloadable audio files featuring music and musical entertainment; sunglasses; musical video recordings; pre-recorded DVDs and CDs featuring performances by an individual in the field of music and musical entertainment; musical sound recordings; audio recordings featuring music; downloadable multimedia files featuring music; battery-activated light sticks; series of musical sound recordings; musical sound recordings; video recordings featuring music; downloadable video recordings featuring music and musical entertainment; downloadable musical sound recordings; digital music downloadable from the internet; video recordings featuring music and musical entertainment; audio recordings featuring music and musical entertainment; digital media, namely, pre-recorded DVDs, downloadable audio and video recordings, and CDs featuring and promoting music and musical entertainment; downloadable multimedia files containing audio, video, artwork, graphics, hypertext, text relating to music and musical entertainment; downloadable electronic newsletters delivered by e-mail in the fields of music, entertainment, and musical entertainment; downloadable ring tones for mobile phones. FIRST USE: 20150520. FIRST USE IN COMMERCE: 20150520

IC 014. US 002 027 028 050. G & S: Jewelry. FIRST USE: 20141126. FIRST USE IN COMMERCE: 20141126

IC 015. US 002 021 036. G & S: Drumsticks; guitar picks. FIRST USE: 20170410. FIRST USE IN COMMERCE: 20170410

IC 016. US 002 005 022 023 029 037 038 050. G & S: Stationery; blank journals; art prints; posters; decals; sheet music; notebooks; photographs; song books. FIRST USE: 20161211. FIRST USE IN COMMERCE: 20161211

IC 018. US 001 002 003 022 041. G & S: Backpacks; all-purpose carrying bags. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

IC 021. US 002 013 023 029 030 033 040 050. G & S: Beverageware. FIRST USE: 20141211. FIRST USE IN COMMERCE: 20141211

IC 024. US 042 050. G & S: Bed linen; household linen. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

IC 025. US 022 039. G & S: Clothing, namely, headwear, scarves, sweatshirts, shirts, jerseys. FIRST USE: 20161202. FIRST USE IN COMMERCE: 20161202

IC 028. US 022 023 038 050. G & S: Christmas tree ornaments and decorations. FIRST USE: 20141126. FIRST USE IN COMMERCE: 20141126

IC 035. US 100 101 102. G & S: Retail and on-line retail store services featuring paper goods, audio recordings, home furnishings, toiletries, jewelry, key chains, collectibles, bags, toys, household linens, memorabilia, cosmetics, printed publications, video recordings, clothing, printed materials, and digital media. FIRST USE: 20160921. FIRST USE IN COMMERCE: 20160921

IC 041. US 100 101 107. G & S: Entertainment services, namely, conducting contests; entertainment services, namely, providing a website featuring non-downloadable multi-media content in the fields of music and musical entertainment; entertainment services, namely, providing a website featuring non-downloadable multi-media content relating to a musical artist; entertainment services, namely, providing a website containing non-downloadable multi-media content featuring pre-recorded musical performances, stage performances, public appearances, photographs, and other information and multi-media content relating to music and musical entertainment; entertainment services, namely, providing a website containing non-downloadable multi-media content featuring pre-recorded musical performances, stage performances, public appearances, photographs, and other information and multi-media content relating to a musical artist; entertainment services, namely, providing a website featuring news and non-downloadable articles relating to music and musical entertainment; entertainment services, namely, providing a website featuring news and non-downloadable articles relating to a musical artist; entertainment services in the nature of live musical performances; fan club services; entertainment services, namely, providing information relating to music and musical entertainment via a global communications network; providing non-downloadable digital music via a global communications network. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

| | |
|---|---|
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | **86369455** |
| **Filing Date** | August 18, 2014 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | August 16, 2016 |
| **Registration Number** | 5232958 |
| **Registration Date** | June 27, 2017 |
| **Owner** | (REGISTRANT) TAS RIGHTS MANAGEMENT, LLC LIMITED LIABILITY COMPANY TENNESSEE 718 THOMPSON LANE SUITE 108256 NASHVILLE TENNESSEE 37204 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Natalya L. Rose |

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation and citation omitted).

Plaintiff's amended complaint (Doc. 6) fails to state a claim. While plaintiff includes a lengthy recitation about why he believes his earlier cases were wrongly decided, none of those allegations relate to the defendant named here—TAS Rights Management. [3]  Further, to the extent he alleges that defendant engaged in a conspiracy to violate his civil rights in violation of 42 U.S.C. § 1985, that effort fails too. The frivolous basis alleged to support that claim is that defendant's counsel filed a motion to dismiss one of plaintiff's earlier cases, and that the Court then granted it. This too seems unrelated to the named defendant and in any event, is not an actionable claim. See, e.g., Farese v. Scherer, 342 F.3d 1223, 1232 (11th Cir. 2003) (holding that an attorney's conduct which falls within the scope of the client's representation cannot support a § 1985 conspiracy); Hill v. Davis, No. CA 19-00287-JB-C, 2019 WL 1416476, *10 (S.D. Ala. Mar. 6, 2019) (dismissing as frivolous claim that judge and lawyer engaged in conspiracy under § 1985 based on their actions in an earlier case).

Even if any of the claims plaintiff alleges could somehow be reframed to allege a cause of action, the relief plaintiff seeks is unavailable. Plaintiff seeks to have a

---

[3] To the extent plaintiff claims that Judge Howard, defendant's lawyer or Taylor Swift (none of whom are defendants here) engaged in obstruction of justice and/or RICO violations based on their conduct in plaintiff's earlier lawsuits, even assuming those allegations were related to any conceivable civil claims, they are baseless and frivolous on their face and belied by the judicial record of those earlier cases.



**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Jun 21 03:47:22 EDT 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [        ]  OR  Jump  to record: [        ]  **Record 120 out of 313**

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# 1989

Flood Mark

3(1) F

**Word Mark** 1989

**Goods and Services**

IC 009. US 021 023 026 036 038. G & S: Pre-recorded CDs featuring performances by an individual in the field of music and musical entertainment; musical sound recordings; audio recordings featuring music; musical video recordings; series of musical sound recordings; musical sound recordings; video recordings featuring music; downloadable audio files featuring music and musical entertainment; downloadable video recordings featuring music and musical entertainment; downloadable musical sound recordings; downloadable ring tones for mobile phones; digital music downloadable from the Internet; video recordings featuring music and musical entertainment; audio recordings featuring music and musical entertainment; digital media, namely, downloadable audio and video recordings, and CDs featuring and promoting music and musical entertainment; downloadable multimedia files containing audio, video, artwork, graphics, hypertext, text relating to music and musical entertainment; downloadable multimedia files featuring music; downloadable electronic newsletters delivered by e-mail in the fields of music, entertainment, and musical entertainment. FIRST USE: 20141110. FIRST USE IN COMMERCE: 20141110

IC 015. US 002 021 036. G & S: Guitar picks. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

IC 016. US 002 005 022 023 029 037 038 050. G & S: Sheet music; song books. FIRST USE: 20141212. FIRST USE IN COMMERCE: 20141212

IC 035. US 100 101 102. G & S: Retail and on-line retail store services featuring audio recordings, video recordings, digital media. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

IC 041. US 100 101 107. G & S: Entertainment services in the nature of live musical performances; Entertainment services, namely, providing a website featuring photographs, non-downloadable videos, pre-recorded musical performances, and reviews in the field of music and musical entertainment; Entertainment services, namely, providing a website featuring photographs, non-downloadable videos,

pre-recorded musical performances, and reviews relating to a musical artist; fan club services; providing non-downloadable digital music via a global communications network; entertainment services, namely, providing information relating to music and musical entertainment via a global communications network. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

| | |
|---|---|
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86369161 |
| **Filing Date** | August 18, 2014 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | August 11, 2015 |
| **Registration Number** | 5291361 |
| **Registration Date** | September 19, 2017 |
| **Owner** | (REGISTRANT) TAS RIGHTS MANAGEMENT, LLC LIMITED LIABILITY COMPANY TENNESSEE 718 THOMPSON LANE SUITE 108256 NASHVILLE TENNESSEE 37204 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Natalya L. Rose |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST
NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**Trademarks** > **Trademark Electronic Search System (TESS)**

TESS was last updated on Sun Jun 21 03:47:22 EDT 2020

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# 1989

*Flagrulent
mark
3° ✓*

**Word Mark**    1989

**Goods and Services**

IC 006. US 002 012 013 014 023 025 050. G & S: Metal key chains. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

IC 009. US 021 023 026 036 038. G & S: Sunglasses; cases for mobile phones; carrying cases specially adapted for electronic equipment, namely, mobile phones and mobile computers. FIRST USE: 20150520. FIRST USE IN COMMERCE: 20150520

IC 014. US 002 027 028 050. G & S: Jewelry; bracelets. FIRST USE: 20141126. FIRST USE IN COMMERCE: 20141126

IC 016. US 002 005 022 023 029 037 038 050. G & S: Stationery; blank journals; lithographs; art prints; photographs; posters; stickers and decalcomanias; decals; notebooks. FIRST USE: 20161211. FIRST USE IN COMMERCE: 20161211

IC 018. US 001 002 003 022 041. G & S: Backpacks; handbags; tote bags; all-purpose carrying bags. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

IC 020. US 002 013 022 025 032 050. G & S: Pillows. FIRST USE: 20151127. FIRST USE IN COMMERCE: 20151127

IC 021. US 002 013 023 029 030 033 040 050. G & S: Beverageware; drinking glasses, namely, tumblers. FIRST USE: 20141211. FIRST USE IN COMMERCE: 20141211

IC 024. US 042 050. G & S: Towels; beach towels; blanket throws; bed blankets; bed linen; household linen; pillow covers. FIRST USE: 20160701. FIRST USE IN COMMERCE: 20160701

IC 025. US 022 039. G & S: Clothing, namely, jackets, coats, bandanas, headwear, caps, hats, gloves, scarves, sweatshirts, hooded pullovers, shirts, t-shirts, jerseys, footwear, and tops for children and adults; shoes. FIRST USE: 20161203. FIRST USE IN COMMERCE: 20161203

IC 028. US 022 023 038 050. G & S: Christmas tree ornaments and decorations; battery-activated toy LED light sticks. FIRST USE: 20141126. FIRST USE IN COMMERCE: 20141126

IC 035. US 100 101 102. G & S: Retail and on-line retail store services featuring paper goods, household linens, home furnishings, cosmetics, toiletries, clothing, jewelry, key chains, bags, collectibles, memorabilia, toys, printed publications, and printed materials. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

IC 041. US 100 101 107. G & S: Entertainment services, namely, conducting contests; Entertainment services, namely, providing a website featuring non-downloadable multi-media content in the fields of music and musical entertainment; Entertainment services, namely, providing a website featuring non-downloadable multi-media content relating to a musical artist; Entertainment services, namely, providing a website containing non-downloadable multi-media content featuring pre-recorded musical performances, stage performances, public appearances, photographs, and other information and multi-media materials relating to music and musical entertainment; Entertainment services, namely, providing a website containing non-downloadable multi-media content featuring pre-recorded musical performances, stage performances, public appearances, photographs, and other information and multi-media materials relating to a musical artist; Entertainment services, namely, providing a website featuring news and non-downloadable articles relating to music and musical entertainment; Entertainment services, namely, providing a website featuring news and non-downloadable articles relating to a musical artist. FIRST USE: 20141027. FIRST USE IN COMMERCE: 20141027

| | |
|---|---|
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86363039 |
| **Filing Date** | August 11, 2014 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | August 11, 2015 |
| **Registration Number** | 5380899 |
| **Registration Date** | January 16, 2018 |
| **Owner** | (REGISTRANT) TAS RIGHTS MANAGEMENT, LLC LIMITED LIABILITY COMPANY TENNESSEE 718 THOMPSON LANE SUITE 108256 NASHVILLE TENNESSEE 37204 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Natalya L. Rose |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

COMPLAINT NUMBER: 2020-0354434      WARRANT NUMBER: GS919406

PROSECUTOR: Andrew Mullen
DEFENDANT: Daniel James Silva
VICTIM: JAY SCHAUDIES

5-19 2020



STATE OF TENNESSEE, COUNTY OF DAVIDSON
AFFIDAVIT
**CRIMINAL TRESPASS**
**T.C.A. 39-14-405**

Personally appeared before me, the undersigned, **[Select one]** _X__ Commissioner, ___ Metropolitan General Sessions Judge, the prosecutor named above and made oath in due form of law that **[Select one]** __X_ he ___ she **[Select one]** _X__ personally observed ___ has probable cause to believe that the defendant named above on 05/19/2020 in Davidson County, did intentionally or knowingly enter or remain on the property of another knowing that the defendant did not have the effective consent of the property owner to do so, and that **the probable cause is as follows**:

THE DEFENDANT WAS ON THE PROPERTY AT 2201 HARDING PL. THE PROPERTY IS OWNED BY THE HARDING TRUST GROUP. THE DEFENDANT WAS TRYING TO SERVE FEDERAL RICO VIOLATION PAPERWORK TO THE RESIDENT AT THE HOME WHO IS A VERY WELL KNOWN CELEBRITY. HE WAS EXTREMELY AGITATED AND KEPT SAYING THAT HE WAS HERE TO SERVE THE PAPERWORK AND THAT THERE WAS A FELON IN THE HOME AND NEEDED TO BE ARRESTED. HE HAS BEEN TOLD TO LEAVE THE PROPERTY ON SEVERAL OTHER OCCASIONS THIS YEAR AND PREVIOUS YEARS. TODAY HE WAS ALSO ASKED TO LEAVE MULTIPLE TIME AND REFUSED. AS HE WAS PLACED INTO CUSTODY HE BEGAN SHOUTING IN ANGER AND STATING THAT HE WAS GOING TO HAVE THE OFFICERS JOBS. HE ALSO CONTINUED TO DEMAND THAT THE FEDERAL PAPERS NEEDED TO BE SERVED BY POLICE UNDER FEDERAL LAW AND THAT FAULIRE TO DUE SUCH WOULD CONSTITUITE ACCESORY CHARGES FOR THE OFFICER. OFFICER SPOKE TO THE HEAD OF RISK MANAGEMENT FOR THE GROUP WHO STATED THAT THEY HAVE HIM ON VIDEO PREVIOUSLY THERE AND OF HIM BEING ASKED TO LEAVE AND NOT COME BACK. THE DEFENDANT WAS ADAMANT THAT HE WAS THERE TO SERVE THE PAPERS AND MAKE A CITIZENS ARREST SO HE WAS LEGALLY ALLOWED TO BE THERE. HE WAS TAKEN INTO CUSTODY IN LIEU OF CITATION DUE TO THE LIKELY HOOD THE OFFENSE WOULD CONTINUE.

Prosecutor: Andrew Mullen 212309

---

### A R R E S T   W A R R A N T

---

Information on oath having been made, that on the day and year aforesaid, and in the County aforesaid, the offense of Criminal Trespass C MISD, as aforesaid, has been committed and charging the defendant thereof, you are therefore commanded, in the name of the State, forthwith to arrest and bring the defendant before a judge of the Court of General Sessions of Davidson County, Tennessee, to answer the above charge.

Sworn to and subscribed before me on 05/19/2020 20:46:00.

Evan Harris
Magistrate
Norman Harris

Judge of the Metropolitan General Sessions Court/Commissioner

DC

CRIMINAL COURT CLERK

2020 MAY 19 PH 2:47

SERVED

U.S. POSTAGE PAID
PM WINSTON SALEM, NC
WINSTON SALEM, NC
27103
SEP 25, 20
AMOUNT
$13.45
R2304N116735-86



37203

1004



7019 0160 0001 0405 6130

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7019 0160 0001 0405 6130

PRIORITY MAIL

United States
Postal Service®

This product is for use with Priority Mail®.
Misuse may be a violation of federal law.
This label is not for resale.

VISIT US AT USPS.COM®
Label 106A, Nov 2018

PRIORITY MAIL

United States
Postal Service®

This product is for use with Priority Mail®.
Misuse may be a violation of federal law.
This label is not for resale.

VISIT US AT USPS.COM®
Label 106A, Nov 2018

PRIORITY MAIL

United States
Postal Service®

This product is for use with Priority Mail®.
Misuse may be a violation of federal law.
This label is not for resale.

VISIT US AT USPS.COM®
Label 106A, Nov 2018

PRIORITY MAIL

VISIT US AT USPS.COM®
Label 106A, Nov 2018

Daniel James silva

Po box 493,Colfax,nc,27235



RECEIVED
SEP 28 2020
US DISTRICT COURT
MID DIST TENN

To   United States District Court Middle District of Tennessee

801 Broadway, Room 800, Nashville, TN 37203